[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Miller v. Hamilton Cty. Bd. of Elections*, Slip Opinion No. 2021-Ohio-831.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-831

THE STATE EX REL. MILLER *v*. HAMILTON COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Miller v. Hamilton Cty. Bd. of Elections*, Slip Opinion No. 2021-Ohio-831.]

*Elections—Prohibition—Writ of prohibition sought to prevent board of elections from placing mayoral candidate's name on the May 4, 2021 primary-election ballot—Relator failed to show that the board abused its discretion or clearly disregarded applicable law by accepting candidate's nominating petitions with circulator statements that were not in the form of sworn affidavits but did substantially comply with the nominating-petition form prescribed by the city charter—Writ denied.*

(No. 2021-0274—Submitted March 12, 2021—Decided March 18, 2021.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} Relator, Mark W. Miller, seeks a writ of prohibition barring respondents Hamilton County Board of Elections and its members[1] from placing the name of respondent Aftab Pureval on the ballot as a candidate for mayor of Cincinnati in the May 4, 2021 nonpartisan primary election. Miller claims the board abused its discretion and clearly disregarded applicable law by denying his protest of Pureval's candidacy, because Pureval's part-petitions did not include sworn affidavits of the petition circulators, which Miller claims the Cincinnati City Charter requires. Respondents and amicus curiae, the city of Cincinnati, counter that when all applicable sections of the charter are considered, Pureval's petition met the requirements. We agree, and we therefore deny the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} The Cincinnati City Charter provides that "candidates for mayor shall be determined at a nonpartisan primary election to be held on the first Tuesday after the first Monday in May * * *." Article IX, Section 1a, Cincinnati City Charter. To be placed on the primary-election ballot, a mayoral candidate must submit a petition to the board of elections. Article IX, Section 2, Cincinnati City Charter. Pureval submitted his nominating petition, consisting of 76 part-petitions, to the board on February 10, 2021.

{¶ 3} On February 24, the board received from Miller, a registered elector in the city of Cincinnati, a written protest of Pureval's petition under R.C. 3501.39(A). Miller's protest letter alleged that under the Cincinnati City Charter, circulator statements on part-petitions must be by sworn affidavit. The letter claimed that Pureval's part-petitions contained only unsworn circulator statements and that the board should therefore reject his petition. On February 24, the board set a protest hearing for March 2.

---

1. The respondent board members are Gwen L. McFarlin, Joseph L. Mallory, Charles H. Gerhardt III, and Alex M. Triantafilou.

{¶ 4} At the hearing, the board heard arguments from counsel for Miller and counsel for Pureval. The latter argued that the Cincinnati City Charter prescribes a form of petition that Pureval's part-petitions complied with; that under R.C. 3501.38(L), Pureval's petition could not be rejected because he obtained his petition forms from the board within 90 days of the filing deadline; and that all of the other mayoral candidates had used the same forms. These last two claims were based on unsworn factual assertions made by Pureval's attorney.

{¶ 5} The board's counsel then advised that Pureval needed only to "substantially compl[y]" with the charter and that his petitions (as well as those of the other mayoral candidates) did substantially comply. The board voted unanimously to deny the protest, without comment. The board then certified Pureval and five other mayoral candidates to the ballot.

{¶ 6} Miller filed this prohibition action on March 3. We ordered expedited briefing, *see* __ Ohio St.3d __, 2021-Ohio-574, __ N.E.3d __, which is now complete. The city of Cincinnati filed an amicus curiae brief in support of the board.

## II. ANALYSIS

### A. Threshold Issues

{¶ 7} Pureval asserts four threshold arguments. We reject all four.

### 1. S.Ct.Prac.R. 12.02's Affidavit Requirements

{¶ 8} Pureval first argues that we must dismiss the cause because the affidavit accompanying the complaint does not comply with S.Ct.Prac.R. 12.02(B), which states that a complaint in an original action "shall be supported by an affidavit specifying the details of the claim," S.Ct.Prac.R. 12.02(B)(1). The affidavit "shall be made on personal knowledge, setting forth facts admissible in evidence, and showing affirmatively that the affiant is competent to testify to all matters stated in the affidavit." S.Ct.Prac.R. 12.02(B)(2). "We have routinely dismissed original actions, other than habeas corpus, that were not supported by an

affidavit expressly stating that the facts in the complaint were based on the affiant's personal knowledge." *State ex rel. Hackworth v. Hughes*, 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, ¶ 24.

{¶ 9} Miller's complaint was accompanied by an affidavit in which his attorney, Curt C. Hartman, declares that Hartman "has personal knowledge of the factual allegations above and such allegations are true and accurate." Pureval argues that the affidavit is insufficient because it is devoid of specific details or admissible facts and contains no information establishing that Hartman is competent to testify to the matters alleged in the complaint.

{¶ 10} We rejected a similar argument in *Wellington v. Mahoning Cty. Bd. of Elections*, 117 Ohio St.3d 143, 2008-Ohio-554, 882 N.E.2d 420. In that case, the relator's affidavit "state[d] that he ha[d] 'reviewed the facts contained in the foregoing Petition for Writ of Prohibition, and affirm [sic] that they are accurate based on my personal knowledge.' " *Id.* at ¶ 16. We reasoned,

> By specifying in his affidavit that he swore to the accuracy of the facts in the petition and stating that those facts are based on his personal knowledge, Sheriff Wellington satisfied the rule because his petition—as verified by his affidavit—specified the details of his claim, set forth facts admissible in evidence, and affirmatively established that he is competent to testify to the material facts—i.e., he filed a protest challenging Aey's candidacy for sheriff, and the board denied the protest at the conclusion of a hearing at which he testified and presented evidence. He did not need to repeat these same statements in his affidavit, which already verified the truth of these statements.

*Id.* at ¶ 19.

4

{¶ 11} Similarly, here, the complaint specifies the details of the claim, sets forth admissible facts, and establishes Hartman's competency to testify to the material facts, as he was present for and involved in the protest proceedings. We will not dismiss the complaint for failure to comply with S.Ct.Prac.R. 12.02.

### 2. Laches

{¶ 12} Pureval next argues that Miller's claim is barred by the doctrine of laches. "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).

{¶ 13} Miller filed his complaint one day after the board rejected his protest. Pureval does not, however, challenge Miller's delay in the context of *this* case. Rather, he asserts that Miller's true challenge is not to Pureval's candidacy but to the board's interpretation of the Cincinnati City Charter, which he claims has been consistent since 2001. He therefore argues that Miller unreasonably delayed for 20 years, without excuse—causing prejudice to Pureval by making this case an expedited election matter.

{¶ 14} We reject this argument, which ignores such questions as whether Miller had knowledge of the board's longstanding interpretation or was eligible to challenge it before he protested Pureval's petition. Moreover, despite the potential for broader implications, the subject matter of this prohibition action is the board's rejection of Pureval's 2021 mayoral petitions, *see* R.C. 3501.39(A). Because Miller filed this action one day after the board rejected his protest, we find that laches does not bar his claim.

### 3. Unclean Hands

{¶ 15} Pureval next argues that Miller's claim is barred by the doctrine of unclean hands. Pureval argues that Miller has, without explanation, singled him

out by challenging his petition but not those of the other mayoral candidates who used the same forms. He argues that this calls Miller's motives into question and amounts to discriminatory targeting.

{¶ 16} Pureval cites no authority for applying the equitable doctrine of unclean hands in this prohibition action. We have, however, occasionally recognized its potential applicability in mandamus actions. *See State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 53, quoting *State ex rel. Albright v. Haber*, 139 Ohio St. 551, 553, 41 N.E.2d 247 (1942) ("On rare occasions, we have recognized that 'while mandamus is considered a legal remedy, equitable principles often govern its issuance, and it may be denied to those who do not come before the court with clean hands' ").

{¶ 17} In any event, "the doctrine of unclean hands requires a showing that [the relator] engaged in reprehensible conduct, not merely negligent conduct," *State ex rel. Columbus Coalition for Responsive Govt. v. Blevins*, 140 Ohio St.3d 294, 2014-Ohio-3745, 17 N.E.3d 578, ¶ 12, yet the record here is undeveloped on the question of Miller's motivations. We find that the doctrine of unclean hands does not bar Miller's claim.

### 4. Failure to Join Necessary Parties under Civ.R. 19(A)

{¶ 18} Finally, Pureval argues that we must deny Miller's requested relief for failure to join necessary parties under Civ.R. 19(A). He argues that the equal-protection clauses of the Ohio and United States Constitutions would prohibit the selective enforcement of the Cincinnati City Charter, instead requiring the rejection of all mayoral petitions if his is rejected. He therefore argues that complete relief cannot be accorded in this action without joinder of the other five mayoral candidates.

{¶ 19} However, Pureval's equal-protection argument is undeveloped, and he has not established that this court (as opposed to the board) would be able—let alone required—to reject petitions that were not protested before the board under

R.C. 3501.39(A). As the scope of this prohibition action is limited to whether the board abused its discretion by rejecting the protest to Pureval's petition, we will not dismiss the complaint for failure to join parties necessary to accord complete relief.

### B. Elements of the Prohibition Claim

{¶ 20} To be entitled to a writ of prohibition, Miller must prove that the board exercised quasi-judicial power, that it lacked the authority to do so, and that he lacks an adequate remedy in the ordinary course of the law. *State ex rel. Keith v. Lawrence Cty. Bd. of Elections*, 159 Ohio St.3d 128, 2019-Ohio-4766, 149 N.E.3d 449, ¶ 5. Miller lacks an adequate remedy due to the proximity of the May 4 election. *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 15.

### 1. Quasi-Judicial Power

{¶ 21} "Quasi-judicial authority is the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." *State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, 87 Ohio St.3d 184, 186, 718 N.E.2d 908 (1999). Miller argues that the board exercised quasi-judicial power by hearing and rejecting his protest, which was brought pursuant to R.C. 3501.39(A), noting our observation that "R.C. 3501.39(A) requires a board of elections to conduct a quasi-judicial hearing on a petition protest," *State ex rel. Barney v. Union Cty. Bd. of Elections*, 159 Ohio St.3d 50, 2019-Ohio-4277, 147 N.E.3d 595, ¶ 12.

{¶ 22} The board conceded in its answer and acknowledged at the protest hearing that it was exercising quasi-judicial power. However, Pureval argues that the board did not exercise quasi-judicial power because it did not consider sworn testimony at the hearing. And in its brief, the board appears to hedge on its previous admission. On the one hand, it cites our statement that "[a] board of elections exercises quasi-judicial power when it 'conducts a protest hearing pursuant to statute,' " *Keith* at ¶ 6, quoting *State ex rel. Save Your Courthouse Commt. v.*

*Medina*, 157 Ohio St.3d 423, 2019-Ohio-3737, 137 N.E.3d 1118, ¶ 29. On the other hand, the board allows that quasi-judicial proceedings "generally involve the taking of sworn testimony."

{¶ 23} Our recent opinions have included statements such as, "A board of elections exercises quasi-judicial authority when it makes a decision regarding a protest after a mandatory hearing that includes sworn testimony." *E.g.*, *Barney* at ¶ 12; *see also State ex rel. Meyer v. Warren Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2020-Ohio-4863, ___ N.E.3d ___, ¶ 9, citing *Barney* at ¶ 12. And in *Save Your Courthouse*, we stated,

> When a public entity takes official action but does not conduct proceedings akin to a judicial trial, prohibition will not issue. For example, a board of elections did not exercise quasi-judicial authority when it denied an election protest, because it did not consider sworn testimony, receive documents into evidence, or in any other fashion "conduct a hearing sufficiently resembling a judicial trial."

*Id*. at ¶ 27, quoting *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections*, 90 Ohio St.3d 238, 242, 736 N.E.2d 893 (2000).

{¶ 24} However, we took care to clarify in *Baldzicki* that the protest at issue was not brought pursuant to any statute, distinguishing it from "statutory protests requiring quasi-judicial proceedings." *Baldzicki* at 242. And as the statement quoted above indicates, we have acknowledged that sworn testimony is one—but not the *only*—indicator that a hearing resembled a judicial trial.

{¶ 25} As we have noted on many occasions, R.C. 3501.39(A)(2) requires the board to conduct a quasi-judicial hearing. *E.g.*, *State ex rel. Wright v. Cuyahoga Cty. Bd. of Elections*, 120 Ohio St.3d 92, 2008-Ohio-5553, 896 N.E.2d 706, ¶ 9

("This is not a case involving written protests against *petitions or candidacies*, which would have required quasi-judicial proceedings. Cf. R.C. 3501.39(A)(1) and (2)" [emphasis sic]); *State ex rel. Upper Arlington v. Franklin Cty. Bd. of Elections*, 119 Ohio St.3d 478, 2008-Ohio-5093, 895 N.E.2d 177, ¶ 16 ("Here, R.C. 3501.39(A)(2) required that the board of elections conduct a quasi-judicial hearing on relators' protest"); *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 80 Ohio St.3d 302, 306, 686 N.E.2d 238 (1997) ("a board of elections, like a board of revision, is a quasi-judicial body when it considers protests"); *State ex rel. Harbarger v. Cuyahoga Cty. Bd. of Elections*, 75 Ohio St.3d 44, 45, 661 N.E.2d 699 (1996) ("A protest hearing in election matters is a quasi-judicial proceeding"); *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289, 291, 649 N.E.2d 1205 (1995) ("Since R.C. 3501.39 required a hearing which in some respects resembled a judicial trial, the board exercised quasi-judicial authority in denying Thurn's protest and deciding to place the proposed ordinances on the ballot").

**{¶ 26}** The secretary of state's *Election Official Manual* likewise advises boards that "[w]hen resolving a protest, a board is acting in a quasi-judicial capacity." Secretary of State Directive 2021-08, Section 1.04, Ohio Election Official Manual, at 12-9 available at https://www.sos.state.oh.us/globalassets /elections/directives/2021/dir2021-08-ch12.pdf [https://perma.cc/4GUX-4EGM]. The secretary's guidelines for "Acting in a Quasi-Judicial Capacity" advise boards to "[p]lace anyone who will provide testimony under oath" and that decisions should be "based on evidence provided to the board at the hearing and information the board may retain on its own, such as voter registration information." Secretary of State Directive 2021-02, Section 1.03, Ohio Election Official Manual, at 2-32, available at https://www.sos.state.oh.us/globalassets/elections/directives/2021/ dir2021-02-ch02.pdf [https://perma.cc/7UMB-F588].

{¶ 27} The board was doubtless under an *obligation* to conduct a quasi-judicial hearing. Pureval's attorney offered factual statements at that hearing. The board failed to adhere to the secretary's directive to place him under oath; however, as the attorney pointed out at the hearing, he referred to facts that were documented by information retained by the board. We conclude that under these circumstances, the board conducted a hearing sufficiently resembling a judicial trial such that it was exercising quasi-judicial power.

### 2. Lack of Authority

{¶ 28} The question whether the board lacked authority hinges on whether it "acted fraudulently or corruptly, abused its discretion, or clearly disregarded applicable law." *State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 23. There is no allegation of fraud or corruption here.

{¶ 29} Miller argues that the board abused its discretion and disregarded applicable law by denying his protest, because the Cincinnati City Charter requires circulator statements on mayoral petitions to be sworn affidavits, yet the statements on Pureval's part-petitions were unsworn statements made on penalty of elections falsification. We reject this argument and conclude that the board did not abuse its discretion or clearly disregard applicable law, because the charter prescribes a form demonstrating what constitutes an affidavit for purposes of the circulator-statement requirement and Pureval's part-petitions substantially complied with the charter's prescribed form.

{¶ 30} The Cincinnati City Charter sets forth specific requirements for mayoral and council elections in the city. With respect to mayoral-candidate petitions, the charter states the following: "to each separate [petition] paper there shall be attached an affidavit of the circulator thereof stating that each signature thereto was made in the circulator's presence and is the genuine signature of the

10

person whose name it purports to be." Article IX, Section 2, Cincinnati City Charter.

{¶ 31} Miller argues that "affidavit" means a statement sworn before an officer authorized to administer oaths, citing *Toledo Bar Assn. v. Neller*, 102 Ohio St.3d 1234, 2004-Ohio-2895, 809 N.E.2d 1152, ¶ 10, and *State ex rel. Johnson v. Ohio Adult Parole Auth.*, 95 Ohio St.3d 463, 2002-Ohio-2481, 768 N.E.2d 1176, ¶ 5. However, those cases were applying provisions of the Ohio Revised Code.

{¶ 32} The Cincinnati City Charter provides, "[T]he provisions of the general election laws of the state shall apply to all such elections *except as provision is otherwise made by this charter*." (Emphasis added.) Article IX, Section 1, Cincinnati City Charter. The charter does not expressly define "affidavit." However, Article IX, Section 3a of the charter sets forth a prescribed form of petition for mayoral candidates. Section 3a states that the "form of the nominating petition papers shall be substantially as follows," and the circulator statement of the form that follows reads:

Statement of Circulator

I, _____ [name of circulator of petition], declare under penalty of the election falsification laws of the state of Ohio that I am a qualified elector of the city of Cincinnati; that I reside at the address appearing below my signature; that this petition paper contains _____(number) signatures; that I witnessed the affixing of every signature; and that every signature is to the best of my knowledge and belief the signature of the person whose signature it purports to be.

Signed: _____
Address: _____
Date: _____

Article IX, Section 3a, Cincinnati City Charter. The form clearly does not provide for a circulator statement in the manner of a sworn affidavit, but rather one that is styled after the form set forth in R.C. 3513.261.

{¶ 33} "[W]hen construing city charters, we apply general rules of statutory interpretation." *State ex rel. Harris v. Rubino*, 155 Ohio St.3d 123, 2018-Ohio-3609, 119 N.E.3d 1238, ¶ 19. One of these rules is that we do not simply consider words in isolation, but consider the text as a whole. *Vossman v. AirNet Sys., Inc.*, 159 Ohio St.3d 529, 2020-Ohio-872, 152 N.E.3d 232, ¶ 14. Pureval, the board, and the city all argue that Section 2 and Section 3a must be read in pari materia and that when read together, it is clear that Section 3a provides the wording and the form of the "affidavit" required by Section 2. We agree. It would be nonsensical to read the charter otherwise—for example, as requiring both a sworn affidavit and a nearly identical circulator statement made under penalty of elections falsification. Miller argues that *State ex rel. Ditmars v. McSweeney*, 94 Ohio St.3d 472, 764 N.E.2d 971 (2002), controls this issue. In *Ditmars*, we held that the Columbus City Charter required circulator statements in the form of sworn affidavits. *Id*. at 474-475. However, in *Ditmars*, the charter did not define "affidavit" or contain a prescribed petition form. *Id*. Because Section 3a of the Cincinnati City Charter includes a prescribed petition form clarifying the meaning of the affidavit requirement set forth in Section 2, we conclude that *Ditmars* is inapplicable.

{¶ 34} Pureval's part-petitions included circulator statements substantially in the form prescribed in Section 3a of the Cincinnati City Charter. We therefore conclude that the board did not abuse its discretion by rejecting Miller's protest.

### III. CONCLUSION

{¶ 35} Based on the foregoing, we deny the writ.

Writ denied.

12

O'CONNOR, C.J., and DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, J., concurs in judgment only.

FISCHER, J., dissents.

_____

The Law Firm of Curt C. Hartman and Curt C. Hartman, for relator.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and David T. Stevenson and Jesse K. Daley, Assistant Prosecuting Attorneys, for respondent Hamilton County Board of Elections.

McTigue & Colombo, L.L.C., Donald J. McTigue, and Derek S. Clinger; Katz Teller Brant & Hild, Peter J. O'Shea, and Evan T. Nolan, for respondent Aftab Pureval.

Andrew W. Garth, City Solicitor, Emily Smart Woerner, Deputy City Solicitor, and Erica Faaborg, Assistant City Solicitor, urging denial of the writ for amicus curiae, city of Cincinnati.

_____