[Cite as *State ex rel. Donahue v. Allen Cty. Bd. of Elections*, 2021-Ohio-3292.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY


STATE EX REL.,
ALICE DONAHUE, ET AL.,

      PETITIONERS-APPELLANTS,          CASE NO.  1-21-28

      v.

THE ALLEN COUNTY OHIO, BOARD
OF ELECTIONS, ET AL.,          O P I N I O N

      RESPONDENTS-APPELLEES.


Appeal from Allen County Common Pleas Court
Trial Court No. CV 2021 0098

Judgment Affirmed

Date of Decision:   September 20, 2021


APPEARANCES:

    *Richard E. Siferd* for Appellants

    *Lawrence A. Huffman* for Appellee, Elizabeth Hardesty

    *Kayla M. Campbell* for Appellee, Bd. of Elections

Case No. 1-21-28

**PER CURIAM**

{¶1} Petitioners-appellants, Alice Donahue ("Donahue") and Barton H. Mills ("Mills) (collectively, "petitioners"), appeal the June 30, 2021 judgment of the Allen County Court of Common Pleas denying their complaint for a writ of prohibition and granting summary judgment in favor of respondents-appellees, the Allen County Board of Elections (the "board"); Elizabeth Hardesty ("Hardesty"); and Gary Freuh ("Freuh"), Mona Willamowski ("Willamowski"), Keith Cheney ("Cheney"), and Jeffrey Rex ("Rex") as members of the board (collectively, "respondents"). For the reasons that follow, we affirm.

{¶2} This case stems from the 2021 mayoral election for the City of Lima in which Hardesty is a candidate. Following the submission of Hardesty's petition of candidacy for mayor to the board on February 3, 2021, Mills challenged Hardesty's eligibility for the position on February 18, 2021 under Section 72 of the City of Lima Charter, which requires elected officers to be residents and electors of Lima for at least six months before the last date on which nominating petitions can be filed.[1] Mills alleged that Hardesty was not a resident and elector of Lima for at least

---

[1] The election for the mayor of the City of Lima is conducted under R.C. 3513.251, which provides, in its relevant part, that "[n]omination of nonpartisan candidates for election as officers of a municipal corporation having a population of two thousand or more, as ascertained by the next preceding federal census, shall be made only by nominating petition." *See also State ex rel. v. Franklin Cty. Bd. of Elections*, 10th Dist. Franklin No. 01AP-1235, 2002-Ohio-2708, ¶ 22; R.C. 3501.01(J); 3505.04.

-2-

Case No. 1-21-28

six months before the date on which nominating petitions could be filed in accordance with the charter.

**{¶3}** On April 1, 2021, Donahue filed a complaint for a writ of prohibition and declaratory judgment in the trial court against the board, Kathy A. Meyer ("Meyer"), Director of the board; the City of Lima ("Lima"); Freuh, Willamowski, Cheney, Rex, as members of the board; and Hardesty.[2] (Doc. No. 1). Specifically, Donahue sought to prevent the board from including Hardesty on *only* the May 4, 2021 primary-election ballot for Lima mayor. On April 6, 2021, the board, Meyer, Freuh, Willamowski, Cheney, and Rex filed a motion to dismiss the complaint along with an answer.[3] (Doc. No. 8). That same day, Lima filed a motion to dismiss. (Doc. No. 9). On April 13, 2021, Donahue voluntarily dismissed its complaint under Civ.R. 41(A)(1)(a) against Meyer and Lima. (Doc. No. 12).

**{¶4}** On April 13, 2021, petitioners filed an amended complaint in which Mills was added as a party to the case. (Doc. No. 13). The next day, petitioners filed a second amended complaint. (Doc. No. 15). Hardesty filed an answer on April 20, 2021. (Doc. No. 18). On April 26, 2021, the board, Freuh, Willamowski, Cheney, and Rex filed a motion to dismiss the second amended

---

[2] Even though we express no opinion on the timing of Donahue's complaint, we reject any challenge to Donahue's standing to seek relief in prohibition. *See State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, ¶ 40-42.

[3] Motions to dismiss under Civ.R. 12(B)(6) in expedited-election cases are considered "inappropriate." *Accord State ex rel. MacPherson v. Trumbull Cty. Bd. of Elections*, 11th Dist. Trumbull No. 2011-T-0028, 2011-Ohio-1296, ¶ 6.

complaint along with an answer. (Doc. No. 23). Petitioners filed a memorandum in opposition to the board, Freuh, Willamowski, Cheney, and Rex's motion to dismiss the second amended complaint together with a motion for judgment on the pleadings. (Doc. No. 25). The board, Freuh, Willamowski, Cheney, and Rex, and Hardesty filed memoranda in opposition to petitioners' motion for judgment on the pleadings on May 5 and 10, 2021, respectively. (Doc. Nos. 28, 30).

{¶5} Following Hardesty's primary election to be a candidate for mayor in the November 2, 2021 general election, the trial court concluded that petitioners' complaint for a writ of prohibition requesting that the trial court prevent the board from including Hardesty on the May 4, 2021 primary-election ballot was rendered moot. (*See* Doc. No. 47). Consequently, after being granted leave by the trial court, petitioners filed a third amended complaint on June 15, 2021 in the trial court. (Doc. Nos. 34, 41, 42). The third amended complaint specifically requested that the trial court prevent the board from including Hardesty on the November 2, 2021 general-election ballot. Hardesty filed an answer on June 16, 2021. (Doc. No. 43). On June 17, 2021, the board, Freuh, Willamowski, Cheney, and Rex filed a motion to dismiss the third amended complaint along with an answer. (Doc. No. 44). On June 21, 2021, Hardesty filed a motion to dismiss the third amended complaint. (Doc. No. 45).

Case No. 1-21-28

{¶6} On June 30, 2021, treating the parties' motions to dismiss as motions for summary judgment, the trial court denied petitioners' complaint for a writ of prohibition and granted summary judgment in favor of respondents.[4] (Doc. No. 47).

{¶7} Petitioners filed a notice of appeal on July 8, 2021. (Doc. No. 49). They raise one assignment of error.

### Assignment of Error

**The Trial Court erred in finding that Elizabeth Hardesty was a resident of the City of Lima for six months before the filing deadline for the 2021 primary election, and therefore qualified as a candidate for Mayor of the City of Lima, even though she repeatedly referred to Houston, Texas as her home.**

{¶8} In their sole assignment of error, petitioners argue that the trial court erred by denying their complaint for a writ of prohibition and by granting summary judgment in favor of respondents after concluding that Hardesty was a resident of Lima for at least six months before the date on which nominating petitions could be filed in accordance with Section 72 of the City of Lima Charter.

### Standard of Review

{¶9} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). "De novo review is independent and

---

[4] Because the trial court set forth the rights and responsibilities of the parties in its discussion of the petitioners' request for relief in prohibition, the trial court essentially resolved the petitioners' claim for declaratory judgment. *See Am. Modern Home Ins. Co. v. Hagopian*, 3d Dist. Crawford No. 3-02-23, 2003-Ohio-342, ¶ 7 (noting that "the filing of a motion for summary judgment in a declaratory judgment action is not a good practice because it does not resolve the issues before the trial court" but when a trial court sets forth "the rights and responsibilities of the parties in its denial of summary judgment[, it] essentially resolve[s] the complaint for declaratory judgment").

without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶10} "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

*Analysis*

{¶11} Petitioners argue that the trial court erred by granting summary judgment in favor of respondents and argue that they are entitled to relief in

-6-

prohibition because the board lacks the authority to include Hardesty on the November 2, 2021 general-election ballot. In other words, petitioners contend that genuine issues of material fact remain whether the board disregarded applicable law by concluding that Hardesty was a resident of Lima for at least six months before the date on which nominating petitions could be filed in accordance with Section 72 of the City of Lima Charter.

{¶12} To be entitled to a writ of prohibition, petitioners must prove that the board exercised quasi-judicial power, that it lacked the authority to do so, and that they lack an adequate remedy in the ordinary course of the law. *State ex rel. Keith v. Lawrence Cty. Bd. of Elections*, 159 Ohio St.3d 128, 2019-Ohio-4766, ¶ 5.

{¶13} As an initial matter, respondents rely on R.C. 3513.05 to contend that the board is without authority to invalidate Hardesty's petition and remove her name from the general-election ballot. However, because Lima's mayoral candidates appear on a nonpartisan ballot, R.C. 3513.05 is not applicable here. *See Webb v. Lucas Cty. Bd. of Elections*, 195 Ohio App.3d 396, 2011-Ohio-4576, ¶ 18 (6th Dist.) ("However, R.C. 3513.05 provides a protest procedure for declarations of candidacy. As we have stated, Webb did not file a declaration of candidacy. Thus, R.C. 3513.05 is inapplicable."). Instead, when a candidate files a nominating petition, R.C. 3513.262 and 3513.263 provide the procedure to challenge the validity of that candidacy in a primary and general election. *See Foster v. Cuyahoga*

*Cty. Bd. of Elections*, 53 Ohio App.2d 213, 221 (8th Dist.1977). *See also State ex rel. Gamble v. Franklin Cty. Bd. of Elections*, 10th Dist. Franklin No. 01AP-1235, 2002-Ohio-2708, ¶ 21-23. In other words, unlike R.C. 3513.05, the General Assembly choose to provide a protest procedure under 3513.262 and 3513.263, which permits protests prior to a nonpartisan primary *and* nonpartisan general election. *Compare State ex rel. Klein v. Cuyahoga Cty. Bd. of Elections*, 102 Ohio App.3d 124, 127-128 (8th Dist.1995) ("The absence of a means to protest a candidate's qualifications after the primary election [under R.C. 3513.05] evinces the legislative intent that events simultaneous with or subsequent to the election are not grounds for protesting and disqualifying a candidate."). Consequently, (based on the facts and circumstances presented) petitioners' protest is not moot. *See State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, ¶ 41 (agreeing "that it would be futile to require them to file a new challenge with the board based on exactly the same facts"), citing *State ex rel. Cotterman v. St. Marys Foundry*, 46 Ohio St.3d 42, 44 (1989) (concluding that "a person need not pursue administrative remedies if such an act would be futile").

{¶14} Turning to petitioners' request for relief in prohibition, we initially conclude that there is no genuine issue of material fact that petitioners lack an adequate remedy due to the proximity of the November 2, 2021 general election. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462,

2009-Ohio-3657, ¶ 21. Furthermore, there is no genuine issue of material fact that the board exercised quasi-judicial power (which the parties do not dispute) since the board denied petitioners' protest following a hearing, that included sworn testimony, conducted under R.C. 3501.39. *See State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 151 Ohio St.3d 134, 2017-Ohio-8167, ¶ 15. *See also State ex rel. Miller v. Hamilton Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2021-Ohio-831, ¶ 21 ("'Quasi-judicial authority is the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial.'"), quoting *State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, 87 Ohio St.3d 184, 186 (1999).

{¶15} For the remaining requirement for the requested writ of prohibition, "'[i]n extraordinary actions challenging the decisions of * * * boards of elections, the standard is whether [the board] engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.'" *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, ¶ 9, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, ¶ 11. *See also State ex rel. Phillips, v. Lorain Cty. Bd. of Elections*, 62 Ohio St.3d 214, 217 (1991) ("R.C. 3513.262 declares that the board's decisions on protests to nominating petitions are final; however, we shall set aside such decisions for fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions.").

"A board abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable fashion." *State ex rel. O'Neill v. Athens Cty. Bd. of Elections*, 160 Ohio St.3d 128, 2020-Ohio-1476, ¶ 11.

{¶16} Here, the trial court granted summary judgment in favor of respondents after concluding that there is no genuine issue of material fact reflecting that that the board abused its discretion or disregarded Section 72 of the City of Lima Charter by denying petitioners' protest to Hardesty's candidacy.

{¶17} Section 72 of the City of Lima Charter sets forth the specific residency requirements for elected officers of Lima. The charter provides, in its relevant part, that

> "all elected officers of the City of Lima shall be residents and electors of the City for at least six (6) months before the last date on which nominating petitions can be filed in accordance with this Charter * * * ."

Section 72(A), Lima City Charter.

{¶18} Importantly, the charter does not define the term "resident," and its meaning is unclear and ambiguous. *See Sherwin-Williams Co. v. Dayton Freight Lines, Inc.*, 112 Ohio St.3d 52, 2006-Ohio-6498, ¶ 15. Consequently, the issue in this case amounts to a linguistic dispute over the meaning of the term "resident" as it is used in the City of Lima Charter. Petitioners advance a narrow view of the meaning of the term and claim that the board clearly disregarded Section 72 of the City of Lima Charter, asserting that the charter "requires one to *live* in Lima, for six

-10-

months, not hope or intend to live in Lima." (Emphasis added.) (Appellant's Brief at 8). Respondents disagree and contend that the board did not abuse its discretion or clearly disregard applicable law because an elected officer's residency under Section 72 of the City of Lima Charter can be interpreted more broadly under R.C. 3503.02.

{¶19} """County boards of elections are of statutory creation, and the members thereof in the performance of their duties must comply with applicable statutory requirements."""" *Husted*, 123 Ohio St.3d 208, 2009-Ohio-5327, at ¶ 11, quoting *Whitman* at ¶ 12, quoting *State ex rel. Babcock v. Perkins*, 165 Ohio St. 185, 187 (1956). In the furtherance of those duties, the Supreme Court of Ohio has "implicitly recognized a board of elections' right to determine" the meaning of statutory-qualification requirements. *See State ex rel. Emhoff v. Medina Cty. Bd. of Elections*, 153 Ohio St.3d 313, 2018-Ohio-1660, ¶ 19, citing *State ex rel. Kelly v. Cuyahoga Cty. Bd. of Elections*, 70 Ohio St.3d 413, 415 (1994).

{¶20} "In construing charter provisions, we apply general laws regarding statutory interpretation, including construing charter language according to its ordinary and common usage." (Citation omitted.) *State ex rel. Beard v. Hardin*, 153 Ohio St.3d 571, 2018-Ohio-1286, ¶ 27. *See also Vossman v. AirNet Sys., Inc.*, 159 Ohio St.3d 529, 2020-Ohio-872, ¶ 14 ("Generally, we read undefined terms as having their plain and ordinary meaning."); R.C. 1.49. "If words have acquired a

particular meaning, though, we construe them accordingly." *Vossman* at ¶ 14, citing R.C. 1.42. Furthermore, "we do not simply consider words in isolation, but consider the text as a whole." *Miller*, ___ Ohio St.3d ___, 2021-Ohio-831, at ¶ 33.

{¶21} Construing the plain and ordinary meaning of the term, however, does not provide us with a resolution. Indeed, the legal definition of a "resident" is "[s]omeone who lives permanently in a particular place"—that is, "a person who has established a domicile in a given jurisdiction," *or* "[s]omeone who has a home in a particular place." *Black's Law Dictionary* (11th Ed.2019). Under the latter meaning, "a resident is not necessarily either a citizen or a domiciliary." *Id.*

{¶22} In other words, the plain and ordinary legal meaning of the term captures the core disagreement of this case. Specifically, "[b]ecause 'domicile' and 'residence' are usually in the same place, [the terms] are frequently used as if they had the same meaning." (Citation omitted.) *Schill v. Cincinnati Ins. Co.*, 141 Ohio St.3d 382, 2014-Ohio-4527, ¶ 25. "'Domicile,' however, means living in a locality with intent to make it a fixed and permanent home, while 'residence' simply requires bodily presence as an inhabitant in a given place." *Id.* In sum, "[a] person can have a residence that is not his or her domicile," and, "[t]hus, a person can have multiple residences, but can have only one domicile." *Id.* at ¶ 24-25.

{¶23} Thus, to properly construe the intent of the charter, another "fundamental rule of statutory construction [is] that statutes relating to the same

subject matter should be construed together." *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289, 294 (1995). "The in pari materia rule of construction may be used in interpreting statutes where some doubt or ambiguity exists." *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585 (1995). "In reading statutes in pari materia and construing them together, this court must give a reasonable construction that provides the proper effect to each statute." (Citation omitted.) *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, ¶ 22.

{¶24} Here, the charter requirement should be read in pari materia with R.C. 3503.02. *Accord Finkbeiner*, 122 Ohio St.3d 462, 2009-Ohio-3657, at ¶ 38 (noting that the "charter requirement should be construed in pari materia with other requirements, including the applicable statutory requirements, like the election-falsification statement required by R.C. 3501.38(J) and incorporated by Section 11 of the Toledo Charter"). *See also O'Neill*, 160 Ohio St.3d 128, 2020-Ohio-1476, at ¶ 13 ("We read Article II, Section 3 [of the Ohio Constitution] in pari materia with R.C. 3503.02, which provides rules for determining the residence of a person offering to register or vote.").

{¶25} R.C. 3503.02, which pertains to the same subject matter and sets forth the rules for determining residence, provides, in its relevant part:

(A)   That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning.

(B)   A person shall not be considered to have lost the person's residence who leaves the person's home and goes into another state or county of this state, for temporary purposes only, with the intention of returning.

(C)   A person shall not be considered to have gained a residence in any county of this state into which the person comes for temporary purposes only, without the intention of making such county the permanent place of abode.

(D)   The place where the family of a married person resides shall be considered to be the person's place of residence; except that when the spouses have separated and live apart, the place where such a spouse resides the length of time required to entitle a person to vote shall be considered to be the spouse's place of residence.

(E)   If a person removes to another state with the intention of making such state the person's residence, the person shall be considered to have lost the person's residence in this state.

(F)   Except as otherwise provided in division (G) of this section, if a person removes from this state and continuously resides outside this state for a period of four years or more, the person shall be considered to have lost the person's residence in this state, notwithstanding the fact that the person may entertain an intention to return at some future period.

(G)(1) If a person removes from this state to engage in the services of the United States government, the person shall not be considered to have lost the person's residence in this state, and likewise should the person enter the employment of the state, the place where such person resided at the time of the person's removal shall be considered to be the person's place of residence.

(G)(2) If a person removes from this state to a location outside of the United States and the person does not become a resident of another

state, the person shall not be considered to have lost the person's residence in this state. The place where the person resided at the time of the person's removal shall be considered to be the person's place of residence.

* * *

(H) If a person goes into another state and while there exercises the right of a citizen by voting, the person shall be considered to have lost the person's residence in this state.

*See also State ex rel. Morris v. Stark Cty. Bd. of Elections*, 143 Ohio St.3d 507, 2015-Ohio-3659, ¶ 23 ("In election cases involving candidate-residence issues, this court applies R.C. 3503.02.").

{¶26} Furthermore, "[m]unicipal charters *must* be construed to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible." (Emphasis added.) *State ex rel. Ditmars v. McSweeney*, 94 Ohio St.3d 472, 477 (2002). "Therefore, '"[i]n the absence of express language in a charter demonstrating a conflict with a statute, it is the duty of courts to harmonize the provisions of the charter and statutes relating to the same matter."'" *Finkbeiner* at ¶ 31, quoting *State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections*, 93 Ohio St.3d 529, 533 (2001), quoting *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections*, 86 Ohio St.3d 107, 112 (1999).

{¶27} Based on the absence of express language in the charter demonstrating a conflict with the statute, R.C. 3503.02 is applicable to determining an elected officer's residence under Section 72 of the City of Lima Charter. *See State ex rel.*

*Fritz v. Trumbull Cty. Bd. of Elections*, ___ Ohio St.3d ___, 2021-Ohio-1828, ¶ 18. Likewise, statues (similar to R.C. 3503.02) are incorporated by reference into the charter by Section 15, which states that "the provisions of the general election laws of the State shall apply to all such elections except as provision is otherwise made by this Charter or by council ordinance not in conflict with this Charter." Section 15, Lima City Charter. *Accord Finkbeiner* at ¶ 33. *See also Miller*, ___ Ohio St.3d ___, 2021-Ohio-831, at ¶ 32. Therefore, construing R.C. 3503.02 in pari materia with Section 72 of the City of Lima Charter, we conclude that the board did not abuse its discretion or clearly disregard the applicable law by turning to Ohio's general election laws—R.C. 3503.02 in this case—to harmonize the meaning of the term "resident" under the charter with the Revised Code since provision for the meaning of the term "resident" is not "otherwise made" by the charter. *See Finkbeiner* at ¶ 34

{¶28} Furthermore, based on our de novo review of the record, we conclude that there is no genuine issue of material fact that Hardesty was a resident of Lima for at least six months before the last date on which nominating petitions could be filed in accordance with Section 72 of the City of Lima Charter. Here, Hardesty contends that she is a resident of Lima by virtue of R.C. 3503.02(A), (B), or (C), while petitioners assert that she "lost [her] residence" in this state" under 3503.02(E). (Doc. No. 42).

-16-

**{¶29}** Important to this case, the board conducted a hearing on March 4, 2021 at which Hardesty presented the *only* sworn testimony. Hardesty testified that she has been outside of Lima and away from her home in Lima only due to her employment as a geologist. (Mar. 4, 2021 Tr. at 45). (*See also* Doc. No. 26, Ex. A). Nevertheless, she presented *uncontroverted* evidence that it is her intention to return to her home in Lima. (Doc. No. 26, Ex. A). Moreover, Hardesty presented unequivocal evidence that she has maintained her status as an elector in Allen County and has voted either in person or absentee "in every single election." (Mar. 4, 2021 Tr. at 34-35, 40, 49, 55); (Doc. No. 26, Ex. A). Even though she testified that she has a Pennsylvania driver's license and that her vehicle is registered in the State of Texas, she testified that she maintains bank accounts and a safety-deposit box in Lima, and she presented evidence that she receives mail at her residential address in Lima. (*Id.* at 29-31, 37); (*Id.*).

**{¶30}** In response to the evidence presented by Hardesty, petitioners relied on evidence which they asserted bolstered their claim that Hardesty lost her residence in Lima under R.C. 3503.02(E). Specifically, in addition to the driver's license and vehicle-registration evidence, petitioners submitted evidence that Hardesty formed two companies in Texas and evidence from Hardesty's social-media accounts that they claimed demonstrated that she forfeited her residence in Lima. (Doc. No. 26, Exs. 1, 2). Additionally, petitioners alleged (without

submitting any evidence to the board) that Hardesty did not file a municipal income tax return to Lima during the time she claimed to be a resident. *Compare State ex rel. Herdman v. Franklin Cty. Bd. of Elections*, 67 Ohio St.3d 593, 594-596, (1993) (suggesting that evidence of the payment of municipal income can constitute evidence of residence).

**{¶31}** Based on the evidence presented, the board concluded that Hardesty was a resident of Lima for at least six months before the last date on which the nominating petitions could be filed in accordance with Section 72 of the City of Lima Charter.

**{¶32}** Importantly, "[b]oards of elections are obligated to weigh evidence of a candidate's qualifications, and courts should not substitute their judgment for that of the board." *Kelly*, 70 Ohio St.3d at 414. *See also State ex rel. Stine v. Brown Cty. Bd. of Elections*, 101 Ohio St.3d 252, 2004-Ohio-771, ¶ 21 ("""We will not substitute our judgment for that of a board of elections if there is conflicting evidence on an issue."""), quoting *State ex rel. Commt. for the Referendum of Lorain Ord. No. 77-01*, 96 Ohio St.3d 308, 2002-Ohio-4194, ¶ 47, quoting *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections*, 88 Ohio St.3d 182, 185 (2000). Indeed, the Supreme Court of Ohio has held that "[t]here is no abuse of discretion when the board reaches its decision based on substantial though conflicting evidence." *State ex rel. Clinard v. Greene Cty. Bd. of Elections*, 51 Ohio St.3d 87, 88 (1990).

**{¶33}** Moreover, "[t]he mere fact that the ordinary meaning of the provisions of the applicable statutes may give a particular individual a choice of more than one place as his voting residence is no reason for determining that those statutes should be so construed as not to permit that." *State ex rel. Klink v. Eyrich*, 157 Ohio St. 338, 344 (1952) (Taft, J., concurring). Construing R.C. 3503.02, the Supreme Court of Ohio has noted that "'[t]he rules which the General Assembly specified were apparently intended to enable an individual in such a situation to select as his residence some place which fairly conformed with one or more of the several rules specified, even though it might not conform with some of the other rules so specified or might not be his domicile.'" *Husted*, 123 Ohio St.3d 288, 2009-Ohio-5327, at ¶ 27, quoting *Klink* at 344 (Taft, J., concurring). Consequently, the court has held that, "when the applicability of multiple sections [of R.C. 3503.02] leads to conflicting results, * * * great weight must be accorded to the person's claimed voting residence." *Id.*

**{¶34}** At the outset, even though the parties do not dispute that Hardesty is an elector in accordance with the charter, that concord is not dispositive of Hardesty's residence. *Compare O'Neill*, 160 Ohio St.3d 128, 2020-Ohio-1476, at ¶ 21 (noting that "registration for voting * * * is not one of the factors for determining the place of an elector's residence under R.C. 3503.02" because "the primary purpose of that statute [is] to 'determin[e] the residence of a person offering

to register or vote' [and i]t may be presumed that a person offering to register at a new home might, at that time, remain registered at a previous home"). Nevertheless, the board did not abuse its discretion or clearly disregard Section 72 of the City of Lima Charter or R.C. 3503.02 by concluding that Hardesty was a resident of Lima for at least six months before the last date on which nominating petitions could be filed in accordance with the charter. Specifically, even though Hardesty did not "live" in Lima as petitioners suggest is required by the charter, Hardesty presented *unequivocal* evidence that her Lima address is the place where her habitation is fixed and to which, whenever she is absent, she has the intention of returning as described under R.C. 3503.02(A). *See State ex rel. Robinson-Bond v. Champaign Cty. Bd. of Elections*, 2d Dist. Champaign No. 2011-CA-21, 2011-Ohio-6127, ¶ 19.

{¶35} Addressing R.C. 3503.02, the Supreme Court of Ohio has "held that the term 'habitation," as used in the statute, means a '"dwelling place; house, home, [or] residence.""" *Holwadel*, 144 Ohio St.3d 579, 2015-Ohio-5306, at ¶ 34, quoting *Kyser v. Bd. of Elections of Cuyahoga Cty.*, 36 Ohio St.2d 17, 21 (1973), quoting *Webster's Third New International Dictionary*. Specifically, with respect to R.C. 3503.02(A), the court noted that "[t]he statute '"emphasizes the person's *intent* to make a fixed or permanent place of abode."'" (Emphasis added.) *Morris*, 143 Ohio St.3d 507, 2015-Ohio-3659, at ¶ 23, quoting *State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 2010-Ohio-2167, ¶ 37, quoting *State ex rel.*

*Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, ¶ 11. However, the court expressly noted that it "did not have occasion to discuss what, if anything, it means to say that one's habitation is 'fixed.'" *Holwadel* at ¶ 34.

{¶36} Therefore, even assuming without deciding that the evidence presented by petitioners constitutes conflicting evidence of Hardesty's residence, we cannot conclude that the board abused its discretion or clearly disregarded Section 72 of the City of Lima Charter or R.C. 3503.02 by concluding that Hardesty was a resident of Lima for at least six months before the last date on which nominating petitions could be filed. *See State ex rel. Bobovnyik v. Mahoning Cty. Bd. of Elections*, 161 Ohio St.3d 349, 2020-Ohio-4003, ¶ 15 ("R.C. 3503.02 'emphasizes the person's intent to make a place a fixed or permanent place of abode.'"), quoting *Duncan* at ¶ 11. In other words, the record supports that the board reached its conclusion (based on substantial evidence) that Hardesty intended to make her Lima address her fixed or permanent place of abode as contemplated by R.C. 3503.02(A). *See O'Neill* at ¶ 19-20; *Husted*, 123 Ohio St.3d 288, 2009-Ohio-5327, at ¶ 31.

{¶37} Moreover, the record supports there was substantial evidence from which the board could conclude that Hardesty did not lose her Lima residence when she left the state for the temporary purpose of working as a geologist with the

intention of returning when that employment ends. *Compare Husted* at ¶ 31 "(In addition, Husted could not be considered to have lost his Montgomery County residence when he left the county for the temporary purpose of working as a state legislator in Franklin County with the intention of returning when that state service ends."), citing R.C. 3503.02(B). Likewise, there was substantial evidence from which the board could conclude that Hardesty did not establish residence in another state, which she entered for the temporary purpose of employment, without the intention of making that state her fixed or permanent place of abode. *Compare id.* ("Nor could Husted be considered to have gained a residence in Franklin County, which Husted entered for the temporary purpose of state employment only, without the intention of making that county his permanent place of abode."), citing R.C. 3503.02(C). Consequently, there is no genuine issue of material fact reflecting that the board abused its discretion or clearly disregarded the applicable law. *See Kelly*, 70 Ohio St.3d at 414.

{¶38} Because there is no genuine issue of material fact reflecting that the board abused its discretion or clearly disregarded the applicable law, there is no genuine issue of material fact reflecting that petitioners are entitled to relief in prohibition. Thus, the trial court properly granted summary judgment in favor of respondents.

{¶39} Petitioners' assignment of error is overruled.

{¶40} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN, J., MILLER, J. and SHAW, J. and concur.**

**/jlr**