[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. O'Neill v. Athens Cty. Bd. Of Elections*, Slip Opinion No. 2020-Ohio-1476.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-1476

THE STATE EX REL. O'NEILL *v*. ATHENS COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. O'Neill v. Athens Cty. Bd. Of Elections*, Slip Opinion No. 2020-Ohio-1476.]

*Mandamus—Elections—Action to compel board of elections to declare relator an eligible candidate for a primary election for the office of state representative and to include in its official canvass of the primary election the votes cast for relator—Residency—R.C. 3503.02—Great weight must be accorded to the person's claimed voting residence—Voting residence—Voter registration—R.C. 3503.01 and 3503.02—Writ granted.*

(No. 2020-0339—Submitted April 7, 2020—Decided April 14, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, Katie O'Neill, seeks a writ of mandamus ordering respondent, the Athens County Board of Elections, to declare that she is an eligible

candidate for the Democratic nomination to the office of state representative for the 94th Ohio House District and to include in its official canvass of the primary election the votes cast for O'Neill. We grant the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. O'Neill's Residency in Athens County

{¶ 2} O'Neill graduated from Ohio University in Athens County in 2013. She left Athens County in 2015 to attend Vermont Law School. On June 29, 2019, her house in Vermont was struck by lightning, and the resulting fire destroyed the building and most of her possessions. O'Neill sent the possessions she could salvage to her parents' home in Geauga County, Ohio, where she also temporarily forwarded her mail. She completed the requirements of her law degree on September 1 and then, using her parents' address, registered to vote in Geauga County on October 4, 2019.

{¶ 3} O'Neill then began to look for employment and a place to live in Athens County. On October 14, she began working in Athens County collecting signatures for the House Bill 6 referendum campaign. That same day, she began staying in Athens County with a friend while searching for an apartment of her own in Athens County.

{¶ 4} On October 31, 2019, she met with Bob Prebe, a representative of a company that managed an apartment in Nelsonville, Ohio, in Athens County. On November 1, O'Neill agreed to a nine-month lease commencing on that date. O'Neill offered to pay the rent and security deposit on November 2 or 3, but at Prebe's request, she met with him on Monday, November 4, when she made her payment, including three months' rent, and got the keys to the apartment. That same day, O'Neill began moving into the apartment.

### B. O'Neill's Candidacy

{¶ 5} On November 5, 2019, O'Neill signed the declarations of candidacy on two part-petitions and began collecting signatures to run for the Democratic

nomination to the office of state representative for the 94th Ohio House District—which encompasses all of Athens and Meigs Counties and parts of Washington and Vinton Counties. Electors signed those part-petitions between November 5 and November 26. O'Neill signed the declaration of candidacy on a third part-petition on November 20, though no electors signed it until December 3. On December 3, O'Neill updated her voter registration to reflect her Athens County address. Thereafter, she signed the declarations of candidacy on five additional part-petitions, and electors signed those part-petitions between December 4 and December 17.

{¶ 6} On December 18, O'Neill filed her petition, which consisted of eight part-petitions and contained 142 signatures. The board did not check the validity of the signatures on the part-petitions that O'Neill executed in November; it considered only the signatures on the five part-petitions that she signed after December 3—the date she changed her voter registration to Athens County. The post-December 3 part-petitions contained more than the minimum number of signatures required for O'Neill to qualify for the ballot. Accordingly, on December 20, the board unanimously certified O'Neill's name to the primary ballot. She was the only Democratic candidate to file for that office.

{¶ 7} On January 2, 2020, Keith Allen Monk, a registered Democrat and resident of the 94th House District, filed a protest against O'Neill's candidacy. On January 14, the board held a protest hearing, after which it tied two to two on whether O'Neill was a resident of the 94th House District and eligible for the primary ballot under Article II, Section 3 of the Ohio Constitution (requiring state representatives to have resided in their districts for one year next preceding their election) and Article XV, Section 4 (requiring office holders to be qualified electors).

{¶ 8} After a second hearing on January 31, the board voted unanimously in favor of the protest, ruling that (1) O'Neill was not an eligible candidate for the

Democratic nomination to the office of state representative for the 94th House District because she had not resided in the district for one year next preceding the November 3, 2020 general election and (2) O'Neill's petition was invalid because she was not a registered voter in Athens County when she began circulating her part-petitions. O'Neill's name remains on the primary ballot as the sole candidate for the Democratic nomination to state representative, but the board has issued notices to electors stating that votes for O'Neill will not be counted. Despite this, O'Neill has provided an affidavit from voter Herman Hill, who states that he has already submitted an absentee-ballot vote for O'Neill.

{¶ 9} O'Neill asked the board for a written explanation of its ruling, but the board declined. She submitted a public-records request to the board on February 27 and received responsive records on March 4. O'Neill filed her mandamus complaint on March 6. She seeks a writ ordering the board to declare that she is an eligible candidate and to include in its official canvass of the primary election the votes cast for her.

## II. ANALYSIS

### A. Mandamus Standard

{¶ 10} O'Neill is entitled to a writ of mandamus if she establishes by clear and convincing evidence that (1) she has a clear legal right to the relief she seeks, (2) the board has a clear legal duty to provide it, and (3) she lacks an adequate remedy in the ordinary course of the law. *See State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998 N.E.2d 1093, ¶ 12. Relators in expedited elections actions usually lack an adequate remedy in the ordinary course of the law due to the proximity of the election. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18. As extended absentee voting will conclude on April 28, 2020, Am.Sub.H.B. No. 197, O'Neill lacks an adequate remedy in the ordinary course of the law.

**{¶ 11}** With respect to the remaining elements, we look to whether the board has "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. O'Neill does not allege fraud or corruption, so the question is whether the board abused its discretion or clearly disregarded applicable law. A board abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable fashion. *State ex rel. McCann v. Delaware Cty. Bd. of Elections*, 155 Ohio St.3d 14, 2018-Ohio-3342, 118 N.E.3d 224, ¶ 12.

### B. Residency in the District

**{¶ 12}** R.C. 3513.05 required the board, after hearing Monk's protest, to deem O'Neill's petition valid unless it found that (1) O'Neill was not an elector of the *district* in which she sought a party nomination or (2) had not fully complied with R.C. Chapter 3513. R.C. 3513.05, paragraph 13. One provision of that chapter, R.C. 3513.07, required O'Neill to certify in her declaration of candidacy that "if elected to said office or position, [she] will qualify therefor."

**{¶ 13}** Article II, Section 3 of the Ohio Constitution requires that "[s]enators and representatives shall have resided *in their respective districts* one year next preceding their election, unless they shall have been absent on the public business of the United States, or of this State." (Emphasis added.) We read Article II, Section 3 in pari materia with R.C. 3503.02, which provides rules for determining the residence of a person offering to register or vote. *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 29.

**{¶ 14}** R.C. 3503.02(A) states, "That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning." While the remainder of R.C. 3503.02 sets forth additional considerations that are applicable in some cases, "[the] statute emphasizes the person's intent to make a

place a fixed or permanent place of abode," *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 11.

{¶ 15} The board abused its discretion and clearly disregarded applicable law by concluding that O'Neill will not have resided in the 94th House District for one year next preceding the November 3, 2020 general election. Specifically, the board focused on when O'Neill became a resident of her Nelsonville apartment rather than when she became a resident of the 94th House District. It is true that the record contains some evidence supporting the board's conclusion that O'Neill did not live in *the apartment* until November 4. However, Article II, Section 3 requires that O'Neill reside *in the 94th House District* for one year next preceding her election—not that she reside at a particular or single location within that district. And there is uncontroverted evidence that O'Neill began residing in the 94th House District on October 14, 2019.

{¶ 16} On that date, O'Neill started living with a friend and working in Athens County while seeking a permanent home there, which she subsequently found and rented. She argues in her brief that her "subjective intention was to move permanently to Athens County in October 2019." Two community members, Christine Hughes and Katherine Kay Jellison, testified before the board that they encountered O'Neill working and attending social functions in Athens during this time period.

{¶ 17} We faced a similar fact pattern in *State ex rel. Morris v. Stark Cty. Bd. of Elections*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232. The question in *Morris* was whether Tom Bernabei, an independent candidate for mayor of Canton, resided in that city on the date that he filed his nominating petition. One day prior to his filing, Bernabei had moved from his family home in Hills and Dales—outside Canton—into a house on University Avenue in Canton that was owned by a friend. He took some basic furniture with him, but his wife continued to live in Hills and Dales. Bernabei and his friend had executed a one-month lease,

6

but his plan from the outset was to reside in the University Avenue house only temporarily. Bernabei owned a house on Lakecrest Street in Canton that he had rented to a doctor and his family, and he planned to move into that house when the doctor vacated the premises, but it was unknown exactly when that would happen. Bernabei ended up sleeping in the University Avenue house for four nights—including the day he filed his nominating petition—then moving into his Lakecrest house with his wife.

{¶ 18} We held in *Morris* that the temporary and open-ended nature of Bernabei's tenancy at the University Avenue house did not mean that he did not reside in the city of Canton when he filed his petition. *Id.* at ¶ 25. Despite the fact that Bernabei's wife remained in nearby Hills and Dales and R.C. 3503.02(D) provides that "[t]he place where the family of a married person resides shall be considered to be the person's place of residence," we held that the candidate's intention to reside in the city of Canton was controlling, *id.* at ¶ 26. And we took note of the secretary of state's determination that it was " 'of little significance' " that Bernabei later moved to a different home in Canton. *Id.* at ¶ 21.

{¶ 19} As in *Morris*, the fact that O'Neill's first abode in the district was temporary and her tenure at that home was of an open-ended duration pending the availability of a more permanent option does not mean that she was not a resident, given her intention to reside in Athens County. *See also* R.C. 3503.02(I) ("If a person does not have a fixed place of habitation, but has a shelter or other location at which the person has been a consistent or regular inhabitant and to which the person has the intention of returning, that shelter or other location shall be deemed the person's residence * * *").

{¶ 20} While the board points to evidence of O'Neill's activities *before* October 14, 2019, such as attending law school in Vermont and forwarding her mail to her parents' home in Geauga County after her house in Vermont burned down, it has identified no evidence in the record indicating that O'Neill resided or intended

to make her permanent home somewhere outside of the 94th House District *after* October 14.

{¶ 21} The board emphasizes the fact that in October 2019, O'Neill was still registered to vote in Geauga County. However, registration for voting elsewhere is not one of the factors for determining the place of an elector's residence under R.C. 3503.02, which furthers the primary purpose of R.C. 3503.02, to "determin[e] the residence of a person offering to register or vote." It may be presumed that a person offering to register at a new home might, at that time, remain registered at a previous home.

{¶ 22} The board has identified no other R.C. 3503.02 factors that it believes contradict O'Neill's stated intention to make Athens County her residence. Moreover, even when various factors listed under R.C. 3503.02 do lead to conflicting conclusions, "great weight must be accorded to the person's claimed voting residence." *Husted*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, at ¶ 27.

{¶ 23} Because Article II, Section 3 of the Ohio Constitution requires only that O'Neill reside in the 94th House District for one year next preceding the November 3, 2020 general election and because the undisputed evidence showed that O'Neill began working and living in that district in the middle of October 2019, the board abused its discretion and disregarded applicable law by upholding the protest to O'Neill's candidacy.

### C. Voting Residence and Registration in the District

{¶ 24} R.C. 3513.07 provides that the form of a declaration of candidacy and petition of a candidate for party nomination to office shall be substantially as set forth in that statute. The form in R.C. 3513.07 requires candidates to set forth their "voting residence" and to declare under penalty of election falsification that they are a qualified elector in the precinct in which their voting residence is located.

{¶ 25} The board granted the protest in part because O'Neill was not a registered voter in Athens County when she began circulating her part-petitions in November 2019. The board argues that (1) O'Neill's failure to change her voter-registration address before circulating her first part-petitions means that her declaration of candidacy failed to accurately state her voting residence and (2) to be qualified to run for office, a candidate must be registered to vote in her election district when she signs her declaration of candidacy. The second point actually goes to the requirement that the candidate be a "qualified elector." The board abused its discretion and clearly disregarded applicable law when it rejected O'Neill's petition on these grounds.

### 1. Voting Residence

{¶ 26} " 'Voting residence' means that place of residence of an elector which shall determine the precinct in which the elector may vote." R.C. 3501.01(P). The board argues that because O'Neill was registered to vote in Geauga County when she executed her first declarations of candidacy, her parents' home was her true voting residence. The board has it backward: where a person resides determines where they may register and vote; where the person is registered to vote does not determine where they reside. R.C. 3503.02. The board's conclusion would have required O'Neill to state that her voting residence was a location where she did not reside and to which she did not intend to return. This was an abuse of discretion.

### 2. Registration in the Election District

{¶ 27} The board alludes to a requirement that a candidate must be registered in the election district at the time he or she signs a declaration of candidacy. However, the board's argument is rooted in a statutory scheme that the General Assembly significantly altered in 1994. The board cites a passage from *Morris* that addresses R.C. 3513.261, which requires independent candidates to state in the declarations of candidacy on their nominating petitions, "I am an elector

qualified to vote for the office I seek." R.C. 3513.07's form declaration of candidacy for partisan candidates does not include this statement, but both statutes require the candidate to make the similar statement, "I am a qualified elector in the precinct in which my voting residence is located."

{¶ 28} With respect to R.C. 3513.261's requirement that the candidate state that he or she is qualified to vote for the office sought, *Morris* said, "To be qualified to vote for the office, the prospective candidate must be registered to vote at an address within the election district at the time he or she signs the statement." *Morris*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, at ¶ 22. However, as O'Neill points out, this statement was dicta in *Morris* because the candidate there had provided the board with a change of address before signing his declaration. *Id.* at ¶ 10-16. More importantly, however, the statement in *Morris* relied on *State ex rel. Walsh v. Ashtabula Cty. Bd. of Elections*, 65 Ohio St.3d 197, 203-204, 602 N.E.2d 638 (1992), a case decided under the statutory scheme that was significantly altered in 1994.

{¶ 29} When *Walsh* was decided in 1992, R.C. 3503.11(A) provided that any change of address made less than 29 (or 30, depending on whether the change was made at a temporary or permanent registration office and on the type of election) days before the election was invalid for that election. The General Assembly removed that language from the statute in 1994, Am.Sub.S.B. No. 300, 145 Ohio Laws, Part II, 2516, 2529. At the same time, it enacted provisions allowing registered voters to change their address on election day and cast a provisional ballot in that election—even if moving from one county to another. R.C. 3503.16(A) and (C), 145 Ohio Laws, Part II, at 2536-2539; R.C. 3503.19(A), 145 Ohio Laws, Part II, at 2541-2543.

{¶ 30} R.C. 3501.01(N) provides, " 'Elector' or 'qualified elector' means a person having the qualifications provided by law to be entitled to vote." Article V, Section 1 of the Ohio Constitution and R.C. 3503.01(A) set forth the applicable

qualifications, and together, they provide that a qualified elector is someone who (1) is a United States citizen, (2) is 18 or over, (3) has been an Ohio resident for 30 days immediately preceding the election, (4) is a resident of the county and precinct in which he or she offers to vote, and (5) has been registered to vote for 30 days. O'Neill, who registered to vote in Ohio on October 4, met all of these requirements.

{¶ 31} Because O'Neill met the above requirements, she was a qualified elector. And because she was a registered voter who resided in the 94th House District in November 2019 and was therefore eligible to vote there, she was a qualified elector *in that district* at the time she signed her first declarations of candidacy. The board therefore abused its discretion by rejecting O'Neill's petition.

### D. Laches

{¶ 32} In its answer, the board asserted the affirmative defense of laches. The elements of laches are "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Save Your Courthouse Commt. v. Medina*, 157 Ohio St.3d 423, 2019-Ohio-3737, 137 N.E.3d 1118, ¶ 17. Despite invoking the doctrine in its answer, however, the board presents no argument regarding laches in its brief and has therefore waived the defense. *See*, *e.g.*, *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, ¶ 83 (claim raised in complaint is waived if not addressed in merit brief).

{¶ 33} Moreover, while it is true that O'Neill filed her complaint four weeks after the board issued written notice of its decision, the board has identified no prejudice resulting from this delay. This case would have been expedited under S.Ct.Prac.R. 12.08 regardless of any delay. And O'Neill's name is already on the prepared ballots; the only question is whether votes cast for her unopposed

candidacy will be counted after the conclusion of absentee voting, which has been extended to April 28. Laches does not preclude us from issuing the writ.

### III. CONCLUSION

{¶ 34} Based on the foregoing, we grant a writ of mandamus ordering the Athens County Board of Elections to declare that O'Neill is an eligible candidate for the Democratic nomination to the office of state representative for the 94th Ohio House District and to include in its official canvass of the primary election the votes cast for O'Neill.

Writ granted.

O'CONNOR, C.J., and KENNEDY, FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., dissents, with an opinion.

_____

**FISCHER, J., dissenting.**

{¶ 35} I respectfully dissent. I conclude that relator, Katie O'Neill, has not proved by clear and convincing evidence that respondent, the Athens County Board of Elections, abused its discretion or acted in clear disregard of applicable law when it ruled (1) that O'Neill was not an eligible candidate for the Democratic nomination to the office of state representative for the 94th House District, because she had not resided in the district for one year next preceding the November 3, 2020 general election, and (2) that O'Neill's petition was invalid because she was not a registered voter in Athens County when she began circulating her part-petitions. I would accordingly deny the requested writ of mandamus.

{¶ 36} To be entitled to the writ of mandamus, O'Neill has the burden of establishing, by clear and convincing evidence, (1) that she has a clear legal right to the requested relief, (2) that there is a clear legal duty on the part of the board to provide it, and (3) that she lacks an adequate remedy in the ordinary course of the

law. *State ex rel. Fockler v. Husted*, 150 Ohio St.3d 422, 2017-Ohio-224, 82 N.E.3d 1135, ¶ 8.

{¶ 37} With respect to the clear-legal-right and clear-legal-duty elements, we must determine whether the board has "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. " 'An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude.' " *State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 12, quoting *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 80 Ohio St.3d 302, 305, 686 N.E.2d 238 (1997).

{¶ 38} I would not conclude that the board's decision was unreasonable, arbitrary, or made with an unconscionable attitude or that the board acted in disregard of applicable legal provisions. In regard to O'Neill's residency, the evidence in this case does not establish a clear, precise date upon which O'Neill became a resident of the district. R.C. 3503.02(A) emphasizes that when determining where a person resides, the fact-finder must consider the person's intent to make a place a fixed or permanent place of abode. *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 11. In making its subjective determination of O'Neill's intent, the board had to interpret and weigh the various facts before it. The facts in this case are not entirely clear, and in making its determination the board may have weighed O'Neill's credibility, which could have been called into question given the misleading nature of her R.C. 3513.07 statement, as discussed below. Given that the board could reasonably have questioned whether O'Neill became a resident of the district in time to qualify as a candidate, I cannot say that the board acted unreasonably, arbitrarily, or unconscionably in concluding that she was not a resident of the district for the requisite time prior to the election in question.

{¶ 39} In regard to O'Neill's voter registration in the district, I would not hold that changes to the Revised Code have eliminated the requirement, noted in *State ex rel. Morris v. Stark Cty. Bd. of Elections*, 143 Ohio St.3d 507, 2015-Ohio-3659, 39 N.E.3d 1232, ¶ 22, that a prospective candidate must be registered to vote at an address within the election district at the time he or she signs the R.C. 3513.07 candidate statement. O'Neill is correct that in the *Morris* decision, the statement setting forth the requirement is dicta; however, it remains sensible to enforce the requirement.

{¶ 40} R.C. 3513.07 requires a prospective candidate to declare "under penalty of election falsification" that the prospective candidate is "*a qualified elector in the precinct* in which [the prospective candidate's] voting residence is located." (Emphasis added.) Significantly, the statute does not require the prospective candidate to state only that he or she is a qualified elector or a qualified elector who *will be* eligible to vote on the date of the election in the precinct in which his or her residence is located. Instead, the statute requires the prospective candidate to be a "qualified elector in the precinct" at the time the statement is made. While R.C. 3513.07 notes that the prospective candidate's statement must "substantially" follow the language set forth in the statute, the requirement that the prospective candidate be a "qualified elector in the precinct" cannot be completely disregarded. I would accordingly conclude that it was sensible for this court in *Morris* to note the requirement that a prospective candidate must be registered to vote at an address within the election district at the time he or she signs a candidate statement under R.C. 3513.07 or R.C. 3513.261.

{¶ 41} The per curiam opinion correctly notes that O'Neill was a "qualified elector" under Ohio law. Majority opinion at ¶ 31. However, even assuming that she was a resident of the district, O'Neill was not a "qualified elector in the precinct in which [her] voting residence is located" at the time she signed the statement on some of her part-petitions. Instead, at that time, she was registered to vote in

14

Geauga County. The fact that she could change her address with the board of elections at any time until the election is immaterial: at the time she signed the statement, she could not vote in Athens County. Thus, because O'Neill had not updated her voter-registration information prior to signing her R.C. 3513.07 statement, the board did not abuse its discretion in concluding that her petition was invalid.

{¶ 42} For these reasons, I dissent and would deny the requested writ of mandamus.

_____

Paul W. Flowers Co., L.P.A., and Louis E. Grube, for relator.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Zachary L. Saunders, Assistant Prosecuting Attorney, for respondent.

_____