[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. N. Canton City Council v. Stark Cty. Bd. of Elections*, Slip Opinion No. 2023-Ohio-726.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-726

THE STATE EX REL. NORTH CANTON CITY COUNCIL *v.* STARK COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. N. Canton City Council v. Stark Cty. Bd. of Elections*, Slip Opinion No. 2023-Ohio-726.]**

*Mandamus—R.C. 5705.191—R.C. 5705.25—Writ sought to compel board of elections to include two proposed levies on May 2023 primary-election ballot as renewal levies—Proposed levies ineligible for placement on ballot as renewal levies because they are not being imposed under R.C. 5705.191 for purpose of supplementing general fund for at least one of purposes identified in R.C. 5705.25(A)(2)—Writ denied.*

(No. 2023-0218—Submitted March 3, 2023—Decided March 10, 2023.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this expedited election matter, relator, North Canton City Council, seeks a writ of mandamus ordering respondent, Stark County Board of Elections, to place two proposed levies on the May 2, 2023 primary-election ballot. Because the board properly determined that the proposed levies are ineligible for consideration at the 2023 primary election, we deny the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

*A. City's Existing Tax Levies for Street and Storm-Sewer Improvements*

{¶ 2} At the November 2019 general election, North Canton voters approved a one-mill renewal levy for the purpose of funding street improvements. That levy is effective for tax years 2020 through 2024. At the same election, North Canton voters also approved a one-mill renewal levy for the purpose of providing funds for storm-sewer improvements. Like the street levy, the storm-sewer levy is effective for tax years 2020 through 2024.

{¶ 3} In December 2022, the council approved Resolution 01-2023, stating (1) that the amount of taxes that may be raised within the ten-mill limitation[1] will be insufficient to provide an adequate amount for general construction, reconstruction, resurfacing, and repair of streets, roads, and bridges in the city, and (2) that it is necessary to levy "a replacement tax" of one mill and "an increase tax" of one mill for a total tax of two mills. Also in December 2022, the council approved Resolution 02-2023, which pertained to storm-sewer improvements. Resolution 02-2023 stated (1) that the amount of taxes that may be raised within the ten-mill limitation will be insufficient to provide an adequate amount for flood

---

1. R.C. 5705.02 states: "The aggregate amount of taxes that may be levied on any taxable property in any subdivision or other taxing unit shall not in any one year exceed ten mills on each dollar of tax valuation of such subdivision or other taxing unit, except for taxes specifically authorized to be levied in excess thereof. The limitation provided by this section shall be known as the 'ten-mill limitation' * * *." *See also State ex rel. Perry Twp. Bd. of Trustees v. Husted*, 154 Ohio St.3d 174, 2018-Ohio-3830, 112 N.E.3d 889, ¶ 3, fn. 1.

defense, to provide and maintain a flood wall or pumps, and to support other storm-water improvements to prevent floods, and (2) that it is necessary to levy "a replacement tax" of one mill and "an increase tax" of one mill for a total tax of two mills. In each resolution, the council requested that the Stark County auditor certify the amount of revenue that would be generated by a two-mill levy. *See* R.C. 5705.03(B).

{¶ 4} As requested by the council, the Stark County auditor certified the estimated revenue that the two-mill levies would raise.

*B. The Proposed Street Levy*

{¶ 5} On January 23, 2023, the council passed Resolution 13-2023, declaring that a tax levy for street improvements should be submitted to North Canton voters at the May 2, 2023 primary election. The resolution stated that the city had

> determined that the amount of taxes which may be raised within the ten-mill limitation * * * for the next five years, pursuant to the provisions of Section 5705.02 of the Ohio Revised Code, [would] be insufficient to provide adequate funding for the purpose of providing for the general construction, reconstruction, resurfacing, and repair of streets, roads, and bridges under [R.C.] 5705.19(G).

The resolution further provided that the proposed levy would be "a replacement" of the existing one-mill levy and an increase of one mill and that the two-mill tax would "be levied for five years, being calendar years 2023, 2024, 2025, 2026, and 2027." The ballot language passed by the council stated:

> A replacement of one (1) mill of an existing levy and an increase of one (1) mill, to constitute a tax for the benefit of North

Canton for the purpose of providing for the general construction, reconstruction, resurfacing, and repair of streets, roads, and bridges, that the county auditor estimates will collect $1,025,045 annually, at a rate not exceeding two (2) mills for each $1 of taxable value, which amounts to $70 for each $100,000 of the county auditor's appraised value, for five (5) years.

{¶ 6} The mayor of North Canton signed Resolution 13-2023, and the clerk of council filed it with the board, seeking placement of the proposed levy on the May 2 ballot.

### C. The Proposed Storm-Sewer Levy

{¶ 7} Also on January 23, 2023, the council passed Resolution 14-2023, declaring that a storm-sewer tax levy should be submitted to North Canton voters at the May 2 primary election. The resolution stated that the city had

determined that the amount of taxes which may be raised within the ten-mill limitation * * * for the next five years, pursuant to the provisions of Section 5705.02 of the Ohio Revised Code, [would] be insufficient to provide adequate funding for the purpose of providing for flood defense, providing and maintaining a flood wall or pumps, and other storm water improvement purposes to prevent floods under [R.C.] 5705.19(O).

The resolution further provided that the proposed levy would be a "replacement" of the existing one-mill levy and an increase of one mill, and that the two mills would "be levied for five years, being calendar years 2023, 2024, 2025, 2026, and 2027." The ballot language passed by the council stated:

A replacement of one (1) mill of an existing levy and an increase of one (1) mill, to constitute a tax for the benefit of North Canton for the purpose of providing for flood defense, providing and maintaining a flood wall or pumps, and other storm water improvement purposes to prevent floods in said City, that the county auditor estimates will collect $1,025,045 annually, at a rate not exceeding two (2) mills for each $1 of taxable value, which amounts to $70 for each $100,000 of the county auditor's appraised value, for five (5) years.

{¶ 8} The mayor of North Canton signed Resolution 14-2023, and the clerk of council filed it with the board, seeking placement of the proposed levy on the May 2 ballot.

### D. The Board Rejects the Proposed Levies

{¶ 9} On February 3, Stark County Assistant Prosecuting Attorney Deborah A. Dawson informed the clerk of council that she was going to recommend that the board reject placement of the proposed street and storm-sewer levies on the May 2 ballot. Dawson relayed that the resolutions for the proposed levies were defective because the proposed levies would replace existing levies and, therefore, could not be placed on a ballot until the year in which the existing levies expire—2024.

{¶ 10} That same day, City Law Director Wayne Boyer sent an email to Dawson, addressing Dawson's reasons for recommending that the board reject the placement of the proposed levies on the May 2 ballot. Boyer acknowledged that Dawson's position—that replacement levies could not be placed on a ballot before the year in which the existing levies expire—was "typically" true. Boyer explained that in this case, however, the proposed street and storm-sewer levies fall within an exception for renewal and replacement levies that "originate under [R.C.] 5705.191" when the existing levy "was imposed for public assistance or other

similar reasons" and when "the levy is to renew/replace and increase the existing levy." Boyer stated that it was the city's position that the proposed levies meet the R.C. 5705.191 exception to the general rule and could be " 'placed on the ballot at any election in any year.' " Boyer relied on a June 2022 memorandum of the Ohio Department of Taxation that had been distributed to all county auditors. That memorandum referred to the "[g]eneral [r]ule" of R.C. 5705.25 and an "[e]xception for [R.C.] 5705.191 levies."

{¶ 11} Dawson responded to Boyer the same day, citing two problems with the council's reliance on R.C. 5705.191. First, she noted that the council did not cite R.C. 5705.191 in either the proposed-street-levy resolution or the proposed-storm-sewer-levy resolution. Second, Dawson explained that she did not believe that either of the proposed levies fell under the R.C. 5705.191 exception to the general rule, because " 'public assistance' is a term of art, and roads and stormwater improvements do not fit that definition."

{¶ 12} The board held its regular meeting on February 7 and voted unanimously to not certify either of the proposed levies for placement on the May 2 primary-election ballot. In the board's view, a replacement levy for the existing street and storm-water levies could be placed on the ballot for the first time at the November 2024 general election or at any election in 2025.

{¶ 13} Also on February 7, the council held a special meeting to discuss amendments to the resolutions for the proposed street levy and the proposed storm-sewer levy. The council passed Resolution 19-2023, amending the language of the proposed street levy to address Dawson's reasons for rejecting Resolution 13-2023. The council also passed Resolution 20-2023, similarly amending the language of the proposed storm-sewer levy in Resolution 14-2023. Resolutions 19-2023 and 20-2023 each stated that the proposed levy was being submitted to voters under R.C. 5705.19 and 5705.191. The ballot language in the amended resolutions still

described each levy as a "replacement of one (1) mill of an existing levy and an increase of one (1) mill."

{¶ 14} The amended resolutions were submitted to the board on February 8. However, the board has not approved the proposed levies as amended for placement on the May 2 primary-election ballot.

{¶ 15} The council filed this expedited election action on February 13, seeking a writ of mandamus compelling the board to place Resolutions 13-2023 and 14-2023—the original resolutions that were submitted to the board on January 24—on the May 2 primary-election ballot. The council asserts that under R.C. 5705.19 and 5705.191, the proposed street and storm-sewer levies may be placed on a ballot before the year in which the existing levies expire because "both resolutions concern matters of public assistance, relief, or health, and both resolutions renew and increase the existing levies on those same subjects." Accordingly, the council contends that the board's refusal to place the proposed levies on the May 2 primary-election ballot is contrary to law.

{¶ 16} The board filed an answer, and the parties filed evidence and merit briefs under the expedited schedule established in S.Ct.Prac.R. 12.08(A).[2]

---

2. The board contends that the council's evidence and merit brief were untimely filed under S.Ct.Prac.R. 12.08(A)(2)(a), which requires the relator in an expedited election action to file its evidence and merit brief within three days after the filing of the respondent's answer. The board is mistaken. The board filed its answer on February 17, 2023, and the council filed its evidence and merit brief on February 21. Though the council's filing was four days after the board filed its answer, it was timely because the third day fell on the Presidents' Day holiday (February 20). *See* S.Ct.Prac.R. 3.03(A) ("If the last day of the period [prescribed or allowed by these rules] is a Saturday, Sunday, or legal holiday, the period runs until 11:59:59 p.m. local observed time in Columbus, Ohio on the next day that is not a Saturday, Sunday, or legal holiday"); *see also Holiday Filing Rule*, https://www.supremecourt.ohio.gov/opinions-cases/clerk-of-court/office/holiday-filing-rule/ (accessed March 7, 2023) [https://perma.cc/5J39-J623].

## II. ANALYSIS

### A. The Council's Capacity to Sue in Mandamus

{¶ 17} The board argues that the court should deny mandamus relief in this case because the council is not sui juris and is not capable of suing. The board relies on cases in which we have noted that "[a] city council is not *sui juris* and therefore cannot sue or be sued in its own right, absent statutory authority," *see, e.g.*, *Cuyahoga Falls v. Robart*, 58 Ohio St.3d 1, 6, 567 N.E.2d 987 (1991), and it argues that a suit brought by or against the council must be brought by or against the individual council members, *see State ex rel. Cleveland Municipal Court v. Cleveland City Council*, 34 Ohio St.2d 120, 122, 296 N.E.2d 544 (1973).

{¶ 18} We disagree with the board and conclude that the council is a proper relator in this case because it has statutory authority to bring suit. The rule that a city council is not sui juris and cannot sue in its own right has been applied in cases in which the council's capacity or standing to bring suit was doubtful. *See, e.g.*, *Robart* at 1, 6 (city council was plaintiff in taxpayer and declaratory-judgment action); *Council of City of Whitehall v. Rogers*, 69 Ohio App.2d 124, 126, 432 N.E.2d 216 (1980) (council is not a "person" authorized to bring declaratory-judgment action). This case, however, stands on different footing. R.C. Chapter 5705 vests in a municipality's "taxing authority"—here, the council—the ability to declare the need to levy a tax in excess of the ten-mill limitation and to certify a resolution to that effect to the board of elections for submission to the municipality's voters. *See* R.C. 5705.19, 5705.191, and 5705.25.

{¶ 19} When a board of elections refuses to place a taxing authority's resolution on a ballot, the taxing authority is the aggrieved party because its resolution is not being carried into effect. It follows that in this case, the council is the proper party to vindicate the interests reflected in R.C. 5705.19, 5705.191, and 5705.25, by bringing a mandamus action to effectuate the resolutions that it passed.

*B.  The Council's Mandamus Claim*

**{¶ 20}** To obtain a writ of mandamus, the council must establish by clear and convincing evidence that (1) it has a clear legal right to the requested relief, (2) the board has a clear legal duty to provide that relief, and (3) it has no plain and adequate remedy in the ordinary course of the law.  *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13.  Given the proximity of the May election, the council lacks an adequate remedy in the ordinary course of the law.  *See State ex rel. O'Neill v. Athens Cty. Bd. of Elections*, 160 Ohio St.3d 128, 2020-Ohio-1476, 154 N.E.3d 44, ¶ 10.  The remaining elements of the analysis require us to determine whether the board engaged in fraud, corruption, or an abuse of discretion or acted in clear disregard of applicable law.  *Id.* at ¶ 11.

**{¶ 21}** The council accuses the board of "gamesmanship" in the timing of its decision to refuse to certify the proposed levies for placement on the May 2 primary-election ballot, but the council does not go so far as to contend that the board is guilty of fraud or corruption in this case.  Therefore, the dispositive issue is whether the board abused its discretion or clearly disregarded applicable law in refusing to certify the proposed levies for placement on the ballot.

**{¶ 22}** R.C. Chapter 5705 uses the terms "additional," "renewal," and "replacement" to describe different type of levies that a taxing authority may submit to the board for placement on a ballot.  *See, e.g.*, R.C. 5705.03(B)(1).  However, these words are not defined in R.C. Chapter 5705.  The council described the proposed street and storm-sewer levies in Resolutions 13-2023 and 14-2023 as "replacement" levies, but it argues here that the proposed levies are eligible for placement on the May 2 ballot as "renewal" levies under R.C. 5705.191.

**{¶ 23}** The council acknowledges the general rule that a "renewal" levy may not be placed on a ballot until the general election of the final year of the existing levy's effectiveness.  In this case, application of the general rule would mean that the proposed street and storm-sewer levies may not be submitted to North

Canton voters before the November 2024 election. However, the council argues that the levies at issue here are excepted from the general rule because they fall under R.C. 5705.191, which provides:

> The taxing authority of any subdivision, other than the board of education of a school district or the taxing authority of a county school financing district, by a vote of two-thirds of all its members, may declare by resolution that the amount of taxes that may be raised within the ten-mill limitation by levies on the current tax duplicate will be insufficient to provide an adequate amount for the necessary requirements of the subdivision, and that it is necessary to levy a tax in excess of such limitation for any of the purposes in section 5705.19 of the Revised Code, or to supplement the general fund for the purpose of making appropriations for one or more of the following purposes: public assistance, human or social services, relief, welfare, hospitalization, health, and support of general hospitals, and that the question of such additional tax levy shall be submitted to the electors of the subdivision at a general, primary, or special election to be held at a time therein specified.

{¶ 24} Here, the council has proposed the street levy and the storm-sewer levy for purposes recognized in R.C. 5705.19(G) (street maintenance) and 5705.19(O) (flood prevention and defense). The council argues that the proposed levies fall under R.C. 5705.191 because "they propose to increase and renew the existing levies in excess of the ten-mill limitation" and because they are for "public assistance, relief, or health." The council therefore argues that these levies can be submitted to North Canton voters at *any* general, primary, or special election.

10

**{¶ 25}** But even if we accept that the proposed street and storm-sewer levies fall within R.C. 5705.191, that does not answer the question whether the levies can be presented to North Canton voters on the May 2 primary-election ballot. We must read R.C. 5705.191 together with R.C. 5705.25 to answer that question.

**{¶ 26}** R.C. 5705.25(A)(2) provides:

Except as otherwise provided in this division, a resolution to renew or to renew and increase or renew and decrease an existing levy, regardless of the section of the Revised Code under which the tax was imposed, shall not be placed on the ballot unless the question is submitted at the general election held during the last year the tax to be renewed may be extended on the real and public utility property tax list and duplicate, or at any election held in the ensuing year. *The limitation of the foregoing sentence does not apply to a resolution to renew and increase or to renew and decrease an existing levy that was imposed under section 5705.191 of the Revised Code to supplement the general fund for the purpose of making appropriations for one or more of the following purposes: for public assistance, human or social services, relief, welfare, hospitalization, health, and support of general hospitals.*

(Emphasis added.) In this case, North Canton's existing street and storm-sewer levies are effective through the 2024 tax year. And the council acknowledges that under the general rule, the proposed street and storm-sewer levies may not be placed on the ballot as renewal levies until 2024.

**{¶ 27}** The council argues, however, that the proposed levies are for "public assistance, relief, or health" and that they therefore fall within the exception to the

general rule because each proposed levy is "a resolution to renew and increase or to renew and decrease an existing levy that was imposed under section 5705.191 of the Revised Code to supplement the general fund for the purpose of making appropriations for one or more of the following purposes: for public assistance, human or social services, relief, welfare, hospitalization, health, and support of general hospitals," R.C. 5705.25(A)(2).

{¶ 28} The terms "public assistance," "relief," and "health" are undefined in R.C. Chapter 5705, and the council asks us to broadly construe these terms. According to the council, the proposed levies will raise needed funds to improve the quality of North Canton's roads and storm-sewer services, which were overwhelmed during unprecedented flooding in May 2022.

{¶ 29} We need not decide what the terms "public assistance," "relief," and "health" mean in R.C. 5705.191, because the council's argument fails regardless of the meanings of those terms. Under the R.C. 5705.25(A)(2) exception to the general rule, any levy proposed for renewal must have been imposed under R.C. 5705.191 and for the purpose of supplementing the general fund for at least one of the purposes specified in R.C. 5705.25(A)(2). Therefore, to determine whether the proposed street and storm-sewer levies fall within the R.C. 5705.25(A)(2) exception, we must look to the purpose of the existing levies that the council seeks to renew—the street and storm-sewer levies that were passed in 2019. In this case, neither of the existing levies was imposed *to supplement the general fund* for any of the purposes identified in R.C. 5705.25(A)(2). Even if we were to assume that the levies passed in 2019 were imposed under R.C. 5705.191, the council has presented no evidence showing that they were imposed *to supplement the general fund*.

{¶ 30} The existing levies that were passed by North Canton voters in 2019 were imposed for the purposes specified under R.C. 5705.19(G) (street maintenance) and R.C. 5705.19(O) (flood prevention and defense). Indeed, the

ballot language from the levies passed in 2019 specified that the taxes would be for the purposes of "street improvements" and "storm water sewer improvements." Thus, neither of the existing levies were imposed for the purpose of supplementing the city's *general fund*. Moreover, under R.C. 5705.10, all revenue derived from the existing levies is required to be credited to *special* funds related to the purpose for which each levy was passed and to be used only for those purposes. *See* R.C. 5705.10(C) ("All revenue derived from a special levy shall be credited to a special fund for the purpose for which the levy was made"). The council has not shown that the revenue derived from the existing street levy or from the existing storm-sewer levy has been credited in a way other than what is required by statute. Therefore, the exception in R.C. 5705.25(A)(2) does not provide a basis for placing the proposed street and storm-sewer levies on this year's primary-election ballot.

{¶ 31} The board disagrees with the council that the proposed street and storm-sewer levies should be analyzed as "renewal levies" under R.C. 5705.191. The board emphasizes the language in Resolutions 13-2023 and 14-2023 that refers to each levy as a "replacement" of and an increase to the existing levies. And the board contends that because the proposed levies would be "replacement" levies, they are not eligible for placement on a ballot before November 2024 under R.C. 5705.192(B)(2).

{¶ 32} We need not reach the board's argument that R.C. 5705.192(B)(2) is the proper statute under which to analyze the eligibility of the proposed street and storm-sewer levies for placement on the May 2 primary-election ballot. The council's failure to demonstrate that the proposed street and storm-sewer levies fall under the exception for certain renewal levies under R.C. 5705.191 is a sufficient reason to deny the writ.

### III. CONCLUSION

{¶ 33} For the foregoing reasons, the council has failed to show a clear right to have the proposed street levy (Resolution 13-2023) and the proposed storm-

sewer levy (Resolution 14-2023) placed on the May 2, 2023 primary-election ballot. The board did not abuse its discretion or act contrary to law in rejecting the placement of those proposed levies on the ballot, because the proposed levies may not be presented to North Canton voters as "renewal" levies before the November 2024 election. We therefore deny the writ.

Writ denied.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

_____

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Matthew W. Onest, Wayne A. Boyer, and Amanda M. Connelly, for relator.

Kyle L. Stone, Stark County Prosecuting Attorney, and Deborah A. Dawson, Gerard T. Yost, and Jessica L. Logothetides, Assistant Prosecuting Attorneys, for respondent.

_____