**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Gold v. Washington Cty. Bd. of Elections*, Slip Opinion No. 2023-Ohio-1051.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1051

THE STATE EX REL. GOLD, F.K.A. LABES *v.* WASHINGTON COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Gold v. Washington Cty. Bd. of Elections*, Slip Opinion No. 2023-Ohio-1051.]**

*Elections—Mandamus—R.C. 3513.06—Change of name of candidate—Writ of mandamus sought to compel board of elections to place relator's name on May 2, 2023 primary-election ballot as mayoral candidate—Relator failed to show that the board abused its discretion or clearly disregarded applicable law by refusing to certify his name to the ballot because relator had failed to include his former name on his declaration of candidacy and petition—Writ denied.*

(No. 2023-0313—Submitted March 24, 2023—Decided March 30, 2023.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this expedited election matter, relator, Ari Gold, formerly known as "David Asaf Labes," seeks a writ of mandamus ordering respondent, the Washington County Board of Elections, to place his name on the May 2, 2023 primary-election ballot as a Democratic candidate for mayor of Marietta. Gold has also filed a motion to strike the board's merit brief as untimely.

{¶ 2} We deny the motion to strike, because the board timely filed its brief under the expedited schedule set out in S.Ct.Prac.R. 12.08(A). And because the board did not abuse its discretion or clearly disregard applicable law in declining to certify Gold's name to the ballot, we deny the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 3} Upon obtaining United States citizenship in September 2020, relator legally changed his name from "David Asaf Labes" to "Ari Gold." "Ari" had been his father's name, and "Gold" had been a surname in relator's family a long time ago. Since obtaining citizenship, Gold has exclusively used the name "Ari Gold" on legal documents, social media, and in court cases. Gold is registered to vote under that name and is also well known by it as a restaurant owner in Marietta and through his activities in the community.

{¶ 4} On January 17, 2023, Gold filed a nominating petition and declaration of candidacy with the board, seeking to be a candidate for the Democratic nomination for mayor of Marietta. The declaration of candidacy and petition listed "Ari Gold" as the candidate's name but did not state that Gold's former name was "David Asaf Labes." At a meeting on February 7, the board voted not to certify Gold's candidacy for the primary-election ballot. The board determined that R.C. 3513.06 required Gold to list his former name on his nominating petition, because the name change had occurred within the last five years. R.C. 3513.06 states:

> If any person desiring to become a candidate for public office has had a change of name within five years immediately preceding the filing of the person's declaration of candidacy, the person's declaration of candidacy and petition shall both contain, immediately following the person's present name, the person's former names.

{¶ 5} The board informed Gold of its decision in a letter dated February 8. Gold requested reconsideration, and the board held a hearing on February 24. Gold appeared with counsel, who called three witnesses: David Grande, a candidate for president of the Marietta City Council; Mandy Amos, the director of the board; and Gold.

{¶ 6} Grande testified that Gold was well known in the community as "Ari Gold." Grande also testified that when he filed his own candidacy petition with the board of elections, Amos informed him by telephone that he had placed an incorrect date on his petition and that Grande could either cure the defect by submitting new petitions or by coming to the board's certification meeting on February 7. Grande opted to appear at the certification meeting to explain the date on his petition, and the board ultimately certified him as a candidate. Amos testified that the board does not engage in "precheck[ing]" a candidate's petition to alert the candidate of possible defects but acknowledged that she had contacted Grande about his petition. Gold claimed at the hearing that he was treated differently, because he was not given the same opportunity to correct his petition or otherwise explain the defect to the board.

{¶ 7} Gold testified that he changed his name to Ari Gold in September 2020 and that he had used that name exclusively since then. Gold added that he did not change his name to gain an advantage in his candidacy for mayor or to deceive voters. He further testified that had the board alerted him about the requirement

that he include his former name on his petition and declaration of candidacy, he would have either recirculated his petition with both names or appeared before the board at its February 7 certification meeting like Grande had done.

{¶ 8} At the close of the hearing, the board voted unanimously to deny Gold's request for reconsideration. Gold commenced this action on March 3, seeking a writ of mandamus ordering the board to place his name on the May 2, 2023 primary ballot as a candidate for the Democratic nomination for mayor of Marietta. Gold also asks for awards of costs and attorney fees. The board filed an answer, and the parties filed evidence and merit briefs under the expedited schedule set out in S.Ct.Prac.R. 12.08(A).

## II. MOTION TO STRIKE

{¶ 9} Under S.Ct.Prac.R. 12.08(A)(2)(b), a respondent shall file its evidence and merit brief in an expedited election case "within three days after the filing of relator's merit brief." Gold moves to strike the board's merit brief, which was filed on March 16, as untimely under this rule. Gold contends that he electronically filed his brief and served it on the board on Sunday, March 12. Thus, Gold argues that under S.Ct.Prac.R. 12.08(A)(2), the board's brief was due on March 15.

{¶ 10} Gold is wrong. Our rules provide that a brief is *filed* when "the Clerk's Office file-stamps a document and dockets it in a case." S.Ct.Prac.R. 3.02(A)(1)(a). Because Gold filed his merit brief on Sunday, March 12, the clerk did not docket and file-stamp it until the next business day: Monday, March 13. Accordingly, the board's merit brief was timely filed on March 16. We deny Gold's motion to strike.

## III. ANALYSIS

{¶ 11} To be entitled to a writ of mandamus, Gold must establish by clear and convincing evidence that (1) he has a clear legal right to the requested relief, (2) the board is under a clear legal duty to perform the requested acts, and (3) he

4

has no adequate remedy in the ordinary course of the law. *See State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. Given the proximity of the May election, Gold lacks an adequate remedy in the ordinary course of the law. *See State ex rel. O'Neill v. Athens Cty. Bd. of Elections*, 160 Ohio St.3d 128, 2020-Ohio-1476, 154 N.E.3d 44, ¶ 10. The remaining elements of the analysis require us to determine whether the board of elections "engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11; *see also O'Neill* at ¶ 11.

{¶ 12} Gold complains of bad faith on the board's part but does not argue that the board committed fraud or is guilty of corruption. Rather, he contends that the board abused its discretion and clearly disregarded applicable law in deciding not to place his name on the ballot.

*A. Was There a Name Change?*

{¶ 13} With certain exceptions not applicable in this case, R.C. 3513.06 requires "any person * * * [who] has had a change of name within five years immediately preceding the filing of the person's declaration of candidacy" to include the person's former names on his declaration of candidacy and petition. By his own admission, Gold changed his name from "David Asaf Labes" to "Ari Gold" in September 2020, upon obtaining United States citizenship. Thus, by not including his former name on his declaration of candidacy and petition, Gold did not comply with the statute, thereby subjecting his petition to rejection by the board. *See* R.C. 3501.39(A)(4).

{¶ 14} Gold argues, however, that the board erred by ignoring evidence that he had used the name "Ari Gold" for longer than five years. Thus, Gold contends that he effectuated a "common law name change" more than five years prior to his declaration of candidacy, making R.C. 3513.06 inapplicable to his case.

**{¶ 15}** The board did not abuse its discretion or clearly disregard applicable law in finding that Gold had changed his name within five years of submitting his declaration of candidacy. As noted above, Gold testified at the reconsideration hearing that he changed his name from "David Asaf Labes" to "Ari Gold" in September 2020 when he became a United States citizen. He further testified that he had used the name "Ari Gold" exclusively since September 2020. Based on Gold's own testimony suggesting that he was previously known as David Labes and began going exclusively by "Ari Gold" in September 2020, the board had ample evidence to conclude that Gold had changed his name within five years of the date of his declaration of candidacy. The board therefore found properly that R.C. 3513.06 applied to Gold's declaration of candidacy and petition.

### B. Gold's "Statutory Intent" Arguments

**{¶ 16}** Gold also contends that the board abused its discretion and acted contrary to law in "applying an overly-strict interpretation" of the statute to his declaration of candidacy and petition. He emphasizes this court's observation that "[t]he clear purpose of the statute is to prevent a candidate from changing his name to another to avoid an unfavorable result in the use of the abandoned name or to secure advantage by the use of such other name," *Pierce v. Brushart*, 153 Ohio St. 372, 381, 92 N.E.2d 4 (1950). That statutory purpose is not implicated here, says Gold, because there is no evidence that he changed his name for a fraudulent or otherwise improper purpose.

**{¶ 17}** Gold's argument is not persuasive. Though Gold asks us to glean the legislative intent behind R.C. 3513.06, the first place to look for that intent is in the statutory language itself. *See State ex rel. Wolfe v. Delaware Cty. Bd. of Elections*, 88 Ohio St.3d 182, 184, 724 N.E.2d 771 (2000). When statutory language is "unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). And in this case, R.C.

3513.06 is unambiguous: when a person has had a change of name within the preceding five years, the person's former name or names must be placed on the declaration of candidacy and petition. Under the statute's plain language, the intent behind the candidate's use of a different name is not relevant. *Pierce* does not override the unambiguous statutory language.

{¶ 18} Regardless, *Pierce* does not support Gold's argument that the board abused its discretion and disregarded applicable law. In *Pierce*, the question before this court was whether a person's use of two names "for many years both before and after the enactment of Sections 4785-70a, 4785-90a and 4785-98a, General Code, and more than ten years before the filing of his declaration of candidacy and petition * * * constitute[d] a change of name within the purview and meaning of such statutes." *Id.* at 380.[1] The court of appeals held that the candidate had been required to use both names in his declaration of candidacy and petition. *Id.* This court reversed, determining that R.C. 3513.06's predecessor statute, G.C. 4785-70a, did not apply because the candidate had used two surnames, those of his father and his stepfather, "continuously from childhood." *Pierce* at 381. Thus, there was no change of name within the meaning of the statute. In contrast, the record in this case supports the board's conclusion that Gold, in fact, changed his name from "David Asaf Labes" to "Ari Gold" less than five years before submitting his declaration of candidacy.

{¶ 19} Gold also relies on *McLaughlin v. Cuyahoga Cty. Bd. of Elections*, 156 Ohio App.3d 98, 2004-Ohio-492, 804 N.E.2d 1004 (8th Dist.), and *State ex rel. Krupa v. Green*, 114 Ohio App. 497, 177 N.E.2d 616 (8th Dist.1961), for the

---

1. G.C. 4785-70a was the precursor to R.C. 3513.06. At the time *Pierce* was decided, it stated, "In the event that any person desiring to become a candidate for public office has changed his or her name within ten years next preceding the filing of his or her declaration of candidacy, his declaration of candidacy and petition must both contain, immediately following his present name, his former name or names." *See* H.B. No. 183, 118 Ohio Laws, 81. G.C. 4785-90a applied the same rule to nominating petitions, and G.C. 4785-98a required any former names declared under G.C. 4785-70a or 4785-90a to be printed on the ballot along with the candidate's current name.

proposition that R.C. 3513.06 will invalidate a candidacy only if a candidate intended to gain an advantage or deceive voters by using a particular name. But neither case stands for that rule. To the contrary, they speak to a candidate's choice of name on election documents in situations in which R.C. 3513.06 does *not* apply.

{¶ 20} In *McLaughlin*, the candidate used her maiden name, which she had not otherwise used since her marriage; in *Krupa*, the candidate used her maiden name, as she had done continuously since her marriage. *McLaughlin* at ¶ 2, 7; *Krupa* at 499. Under the facts in each of those cases, R.C. 3513.06 was *not* applicable, because the candidate had not *changed* her name within the meaning of the statute. *McLaughlin* at ¶ 6-7; *Krupa* at 503. When there has been no such name change, R.C. 3513.06 does not apply and the validity of the candidate's declaration-of-candidacy petition is "guided by the principle that candidates shall be prevented from changing their names '* * * to avoid an unfavorable result in the use of the abandoned name or to secure advantage by the use of the abandoned name.' " *McLaughlin* at ¶ 7, quoting *Pierce*, 153 Ohio St. at 381, 92 N.E.2d 4; *see also Krupa* at 501 (noting that a person may adopt "any name he wishes," so long as such change is made in good faith and not for fraudulent purposes). In other words, the candidate's intent in using a particular name is relevant when R.C. 3513.06 does not otherwise apply. In this case, however, R.C. 3513.06 applies to Gold's name change, and therefore the board did not act improperly when it found his declaration of candidacy and petition to be invalid under the statute.

{¶ 21} Finally, Gold contends that this court should treat name changes made as part of the citizenship process the same as name changes related to marriage. R.C. 3513.06 specifies that it does not apply "to a change of name by reason of marriage," which Gold argues is indicative of the legislative recognition that such name changes are not undertaken to deceive voters or to gain an unfair advantage in an election. Likewise, Gold contends that his name change was part of the process of becoming a United States citizen and, thus, he should be exempted

from R.C. 3513.06's requirement that both his current and former name be placed on a declaration of candidacy and petition. But this argument is also without merit because we cannot add an exception that does not appear in the statutory language. *See State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 39.

    C. *Absence of a Protest or Another Democratic Candidate Are Irrelevant*

**{¶ 22}** Gold also complains that the board invalidated his candidacy on its own initiative, without any protest having been filed. Gold argues that without a protest, the board lacked authority to invalidate his petition based on noncompliance with R.C. 3513.06.

**{¶ 23}** Gold is incorrect. Under R.C. 3501.39(A)(4), a board of elections must accept a candidate's petition unless "[t]he candidate's candidacy or the petition violates the requirements of this chapter, Chapter 3513. of the Revised Code, or any other requirements established by law." Thus, a board may invalidate a declaration of candidacy and petition "where such declaration and petition does not conform to [the] requirements specified by law, even though no protests were filed." *Pierce*, 153 Ohio St. at 378, 92 N.E.2d 4. The board therefore acted within its statutory authority when it refused to certify Gold's petition.

**{¶ 24}** Gold also argues that the board's "strict reading" of R.C. 3513.06 deprives Marietta voters of a Democratic candidate in the mayoral election, because Gold was the only Democrat to file a declaration of candidacy. Relying on *State ex rel. Morrison v. Franklin Cty. Bd. of Elections*, 63 Ohio St.2d 336, 410 N.E.2d 764 (1980), Gold contends that we should order the board to place his name on the ballot in the interest of giving voters a meaningful choice between mayoral candidates.

**{¶ 25}** The resulting absence of a Democratic mayoral candidate on the ballot does not excuse Gold's noncompliance with R.C. 3513.06. Notably, *Morrison* does not support the proposition that we should take that circumstance

into account when deciding issues related to a candidate's use of different names. In that case, Fred L. Morrison had changed the name on his voter registration to "Fred 'Curly' Morrison" and then filed a declaration of candidacy for state senator as "Fred 'Curly' Morrison." *Id*. at 336. Morrison sought a writ of mandamus to direct the board to place his name on the ballot as "Fred Curly Morrison" instead of "Fred L. Morrison." *Id.* at 337. We denied the writ without deciding whether Morrison's candidacy was invalid under R.C. 3513.06. *Morrison* at 338. Because it was unclear from the record whether Morrison had used "Curly" simply as a nickname or if he actually intended to change his name to include "Curly" as part of his true name, this court found no abuse of discretion in the board's decision to exclude "Curly" from Morrison's name on the ballot. *Id.* at 337-339. But the fact that there would have been no Republican candidate had Morrison's candidacy been deemed invalid was not a basis for this court's decision.

### D. Gold's "Bad Faith" Arguments

{¶ 26} Gold also argues that the board acted in bad faith in refusing to certify his candidacy. He points to several circumstances that purportedly show that the board members were motivated by personal animus toward him or bias against him. Gold also contends that he was subject to disparate treatment: though board director Amos alerted Grande to a possible defect in his candidate petition for a different office, giving Grande time to either cure the defect or explain it to the board, Gold says that he was not given the same opportunity.

{¶ 27} Gold raises bad faith as a basis for an award of attorney fees in this case. But Gold is not entitled to a writ of mandamus and is therefore not a prevailing party entitled to attorney fees. *See State ex rel. Maloney v. Sherlock*, 100 Ohio St.3d 77, 2003-Ohio-5058, 796 N.E.2d 897, ¶ 55 (absent a statute allowing attorney fees as costs, the *prevailing* party is not entitled to attorney fees unless the opposing party acted in bad faith). Moreover, Gold is proceeding pro se in this case

and is therefore not entitled to recover attorney fees. *See State ex rel. Ullmann v. Klein*, 160 Ohio St.3d 457, 2020-Ohio-2974, 158 N.E.3d 580, ¶ 15.

### IV. CONCLUSION

{¶ 28} We deny Gold's motion to strike the board's merit brief, because the brief was timely filed under S.Ct.Prac.R. 12.08(A). And because the board did not abuse its discretion or clearly disregard applicable law in declining to certify Gold's name to the ballot, we deny the writ. We also deny Gold's request for an award of attorney fees.

Writ denied.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

_____

Ari Gold, pro se.

Nicole T. Coil, Washington County Prosecuting Attorney, and Alison Cauthorn-Kreiss, Assistant Prosecuting Attorney, for respondent.

_____